WM. H. GARLINGTON, ET AL., PLAINTIFF IN ERROR, VS. B. F. PRIEST, SHERIFF, &C., DEFENDANT IN ERROR.

1. After demurrer sustained to a plea, if the defendant by leave of the court files a new plea, he thereby abandons his former plea and the exceptions to the judgment on the demurrer; and the last plea being demurred to and the demurrer sustained, this court can review only the judgment upon the demurrer to the last plea.

2. After successive pleas have been held bad, on demurrer thereto, it is error to enter a judgment for want of a plea; the proper judgment is a final judgment on the demurrer.

3. The first section of "an act providing for the stay of executions in this State," approved Dec. 13, 1861, providing that "there shall be no sales under execution and judgments at common law or decrees in Chancery in this State, until twelve months after peace is made and proclaimed or until otherwise provided by law, between the Confederate States of America and the United States of America, except by the consent of the defendant or defendants," provided, that in cases of levy the "defendant be required to give bond with security for the forthcoming of the property on or at the time above specified," is void as contravening the spirit of the constitution of the United States recognizing the establishment of the Confederate government, and contemplating the dismemberment and destruction of the Union of the States.

4. When a party has filed his pleas and they are pronounced insufficient upon demurrer, it is not a matter of course that the defendant may plead *de novo*. The judge should exercise a sound discretion in permitting new pleas to be filed, and should inspect the plea offered, and if it is a mere

repetition of a previous plea or is not a good defence, or seems to be interposed for delay, or if there is any other like good reason, he should refuse leave to fie it.

Per WESTCOTT, J. :

Where a bond was given in 1861 for the forthcoming of slaves levied upon by execution, the condition of which was that the slaves should be delivered twelve months after peace should be made and proclaimed between the Confederate States and the United States of America; *Held*, That the happening of the contingency mentioned was a condition governing the liability of the obligors, and that no breach of the condition having occurred, no action can be maintained upon the bond.

Error to the Circuit Court for Marion County..
The case is stated in the opinion of the court.

*Gary* and *Rogers* for Plaintiff in Error.

*E. M. L'Engle* for Defendant in Error.

I will consider at one and the same time all the pleas which attempt to raise substantially the defence of impossibility or illegality of performance, and will also at the same time consider the 4th amended plea, which pleads " that the event limited for the performance of the condition has not transpired." 11 Mass., 143.

The obvious meaning of the act of Dec. 13, 1861, was to allow defendants in execution to suspend the enforcement of executions *during the war*. It was to give relief to the debtor, (if he chose to avail himself ¦of the provisions of the statute,) and security to the creditor who was obliged to accept it. The law was compulsory as to the creditor, but not on the debtor. 7 Fla., 20, 21 ; 4 Fla., 453 ; 8 Fla., 50 ; 11 Mass., 143.

It is *in pari materia* with the act of 15th March, 1844, (Th. Digest,¦358,) and decisions under that act apply to this.

The bond, (its¦ intention being so construed,) not being complied with by production of the *slaves* to answer the writs of *fi fa.*, the obligors are liable. 8 Porter, 575 ; 5 Stewart & Porter, 126–'9 ; 8 Fla., 352.

The writs of execution were satisfied by the giving of the bond, and if that be declared invalid and that no recovery can be had on it, the plaintiffs in execution may lose their debt.    4 Howard, 4.

The plea of destruction of the property by violence, irresistible force, or public law, that is to say, impossibility of performance, is not a valid, legal or equitable defence, inasmuch as the obligors by their own contract created the charge. It was not imposed upon them by law.    The law only *permitted* them to assume the undertaking.    3 Kent's Com., 465–7, and cases cited ; 6 Mass., 63 ; 2 Wallace, 1, and cases cited ; 19 Wend., 500 ; 3 Dutcher, 515 ; L'Engle, adm'r, vs. Robinson, (decided at the January term, 1870, of this court.) Cases on this point examined and compared : 2 Sneed, 326 ; 4 Caldwell, 436 ; 5 Caldwell, 384; 41 Ala., 124 ; 23 Ark., 415 ; 19 La. Ann. R., 447–8–9 ; 38 Missouri, 306 ; 20 La. Ann. R., 152, 153 ; 34 Ga., 232 ; ib., 368 ; 6 Dana, 122.

The 3d amended plea (which is the same as the 5th plea first filed,) pleads that the act of Dec. 13, 1861, so far as its provisions related to slaves, became abrogated and annulled by the abolition of slavery.

The statute was an existing valid law at the time the bond was given, and slaves were then property, and lawful subjects of contracts as such.    The expiration of the law, its repeal or the abrogation of slavery does not affect the right of action on the bond made *voluntarily* by the obligors.

The repeal of the statute or its expiration, or the abrogation of slavery would only affect the validity of such contracts made suqsequently thereto.    Authorities above cited and 12 Fla., 9 ; Art. XV., sec. 3, Con. of Fla., 1868.

The plea since the last continuance and the amendment thereto, plead that the bond *is* (not *was*) contrary to the constitution of the United States and State.

The constitution of the United States does not support the proposition.    The 26th sec. of XVI article of the constitution of the State is itself in violation of the constitution of

the United States.   18 Howard ; 16 Howard, 369 ; 1 Kent, 418, *et seq.* ; 3 Story's U. S. Constitution ; and conflicts with the 3d sec. of the XV article.

RANDALL, C. J., delivered the opinion of the Court.

Charles Phinney and Robert S. Phinney, plaintiffs in execution, caused a levy to be made upon certain negro slaves alleged to be the property of William H. Garlington, the defendant in execution.   The defendant availed himself of the provisions of " an act providing for the stay of executions in this State," approved December 13, 1861, and gave a bond in the sum of $8000, conditioned for the forthcoming of the property twelve months after peace is made and proclaimed between the Confederate States of America and the United States of America.

In 1867, this action of debt is brought upon this bond against the principal, Garlington, and the sureties, Jesse Williams and others.   The defendants crave oyer of the bonds, which being shown, they interpose eight pleas in bar to the action.   The plaintiff demurs to these pleas, and the demurrer is sustained by the court, and the defendants were permitted to file eleven pleas in bar.   These pleas are again met by a demurrer, the demurrer is sustained by the court, and a judgment *nil dicit* is entered upon the motion of the plaintiff and a writ of inquiry is awarded returnable to the next term.

At the next term this judgment *nil dicit* is vacated upon defendant's motion and they are permitted to file a plea *puis darrien continuance*, which was demurred to by the plaintiff and the demurrer sustained by the court, when the defendants were again granted leave to file an amended plea.

The plea is as follows :

" The said defendants, Jesse Williams and Pickens Creswell, by Gary their attorney, for amended pleas since the last continuance and for a plea on equitable grounds, say that the said supposed writing obligatory in the plaintiff's declaration

mentioned, was executed under the provisions of an act of the General Assembly of the State of Florida, styled " an act providing the stay of executions in this State," approved December 13th, A. D. 1861, whilst the said State was in rebellion with the United States, which said act and said writing obligatory are, and have become null and void, and in conflict with, and contrary to the spirit and provisions of the constitution of the United States and of the State of Florida, and this the said defendants are ready to verify."

To this plea there was a demurrer and joinder, and the demurrer was sustained by the court. The plaintiff then moved for a judgment *nil dicit* which was awarded, and the plaintiff's damages being assessed at $4,608.80, a final judgment for that amount was entered and the defendants now prosecute a writ of error from this court.

The plaintiff in error insists very properly that this court can consider nothing except the judgment upon the demurrer interposed to the last pleas. The precise question arose in the case of Walker vs. Wills, 5 Ark., 167, and it was there held that " when a demurrer is sustained to a plea and leave is asked and granted to file another, the first plea is abandoned, and the decision on the demurrer cannot be considered here."

In Clearwater vs. Meredith, 1 Wallace, 42, it is held that " where a plaintiff replies to a plea and his replication being demurred to is held to be insufficient, and he files a new replication, he waived the right to question in this court the decision in the court below on the sufficiency of what he had first replied."

As a matter of course the rule applicable to plaintiff's replication is applicable to defendants' pleas, and in this case, after demurrer sustained to his first plea and his filing new pleas, he waived any right he might have had to question the correctness of the decision of the court on the demurrer to the first plea. In like manner he abandoned his second set of pleas when by leave of the court he filed the third,

and he abandoned the third when he filed the fourth; and the consequence is we can only review the judgment of the court upon the demurrer to the last plea.

Before proceeding to examine the judgment of the court upon the demurrer to the last plea, we deem it proper to make a remark in reference to the exercise of discretion in this case by the court in permiting three new sets of pleas to be filed at the pleasure of the defendant. The plaintiff presumes that the defendant when he files his plea sets up all the defence which he proposes to make, and the court (even if it is admitted that it may permit it at all,) should not permit new and other pleas to be filed after judgment upon demurrer against the defendant, except in a plain case where it is manifest that the justice of the case requires it, and where the court is satisfied that it is not interposed for delay only. When a party has come in and filed his pleas and they are pronounced insufficient upon demurrer, it is not a matter of course that he may plead *de novo* as in this case. It is his duty to set up all his defence at first. If such was not the rule, it is not seen where there could be an end to a suit. The practice of permitting defendants to interpose successive sets of pleas without any control and at their will and pleasure, is in conflict with all proper ideas of practice. This discretion, if it be exercised at all, should be exercised in such manner as to teach parties that they must have all their defences in at the first, and that it is a serious omission not to do so. The judge should inspect the plea proposed to be filed, and if it is a repetition of a previous plea, or if it is not a good defence, or if the judge thinks it is interposed for delay, or there is any other like good reason, he should refuse leave to file it.

The record discloses that there was no formal judgment entered upon this demurrer, and it contains nothing more than a simple entry endorsed upon the demurrer to the effect that it was sustained. After this there is a final judgment *for want of a plea.* This is incorrect, and this final

judgment must necessarily be reversed. The defendant had not failed for want of a plea. He had in fact filed some twenty pleas, and they were pronounced insufficient upon demurrer. The proper judgment in the case was a final judgment upon the last demurrer.

Setting aside this judgment and indicating to the court below the proper judgment to be given in this case, brings us to the consideration of the last plea.

If it appears by the record that the plaintiff has no cause of action against these defendants, and that the defect is such that no amendment can be made which will cure it, it is immaterial whether the question was raised in the court below or not; the judgment cannot stand.

The first section of the act under which this bond is alleged to have been executed reads as follows : " That there shall be no sales under executions and judgments at common law or decrees in chancery in this State until twelve months after peace is made and proclaimed, or until otherwise provided by law, between the Confederate States of America and the United States of America, except by the consent of the defendant or defendants ; provided, nevertheless, that in case of any levies the defendant or defendants, by themselves, their agent, attorney at law, or attorney *de facto*, be required to give bond, with good and sufficient security, (to be approved by the sheriff making said levy,) for the forthcoming of the property on or at the time above specified in this section."

It is urged by the plaintiff in error that the act of the Legislature referred to has become null and void by the adoption of the State Constitution of 1868, but it is deemed unnecessary to resort to the fifteenth article of that Constitution as authority for declaring void *ab initio* a prior act of the Legislature which was inconsistent with the terms or spirit of the Federal Constitution.

But I regard the first section of Article XV of the present State Constitution as embodying a principle of law applica-

ble to the cases contemplated by it. It reads, " that all ordinances and resolutions heretofore passed by any convention of the people, and all acts and resolutions of the Legislature conflicting .or inconsistent with the constitution of the United States and the statutes thereof, and with this constitution, and in derogation of the existence or position of this State as one of the States of the United States of America, are hereby declared null and void and of no effect." Sections two and three of the same article expressly ratify all acts of the Legislature passed during the war, or at any time previous to or since that event, which are not inconsistent with the Constitution of the United States or the State Constitution of 1868. This was doubtless adopted to save the confusion which would follow the holding of all acts of legislative bodies (which bodies might not be considered strictly legal,) to be invalid.

I consider that all acts of any legislative body passed during the period of the supremacy acknowledged by this State of the " Confederate " government, which were adopted in contemplation of such supremacy and in view of the overthrow of the constitution and government of the United States, as utterly void and of no effect, except so far as individual acts under such laws may, perhaps, be excused by reason of the compulsory nature of such legislation and the inability to resist its enforcement. The act in question expressly recognizes the dismemberment of the United States and the establishment of the Confederate States of America. The war, then in its incipiency, is therein recognized as a war between two nations capable of making treaties with each other. The act holds out to the debtor an inducement to aid in prolonging the war as a means of obtaining an extension of credit or a postponement of the time of payment. It holds out to the creditor an inducement to labor in aid of the success of an inchoate power in its war upon the government of the United States, in effect the destruction of that government and the establishment of another in its

place, in order that the security may become valid and his debt saved.

And though the one may have supposed himself to be beneficially interested in a prolongation of the contest by delaying the day of payment, and the other in hastening the result, and thus a sort of antagonism may have existed between the debtor and creditor, both were induced to oppose the success, either immediate or remote, of the United States government and the supremacy of the constitution of the United States as the national law. Had the Confederate government succeeded in establishing itself, displacing that existing under the constitution of the United States, this statute in question may have been acknowledged as the law and all acts under it have been valid, (unless it be further subject to the objection that it impairs the obligation of contracts;) but with the disasters which put an end to the framework of the Confederacy fell also all statutes, all ordinances and contracts passed or entered into contemplating and depending upon a different result. It may be said that the creditor was not a party to the bond; that the sheriff only was the party protected or saved by it; that the creditor has suffered, and that this is a sufficient consideration on his part, and the delay of payment is a sufficient consideration on the part of the debtor for the enforcement of the bond. However this might have been if the statute were not liable to the denunciation of its nullity, and had it provided merely a stay for a given period, depending upon no such illegal contingency, no consideration can be countenanced which seeks to uphold a contract that in any respect contemplated the destruction of the national life or the national integrity. But the statute being null from the beginning for the reasons stated, no bond or agreement based upon it will be considered valid for the purpose of enforcing it. It is tainted with the illegality of its origin and cannot be enforced in any court bound by a sacred pledge to observe the constitution of the Union. We are obliged to look

upon this contract from the standpoint of that constitution, and from this aspect we see that the statute and the bond contain elements contravening the spirit of the constitution and antagonistic toward the government of the United States, and hence are void as against public policy, even though they contain other provisions which are not subject to these objections. For it is an acknowledged rule that where an entire agreement contains an element which is legal, and one which is against public policy and therefore void, the legal consideration cannot be separated from that which is illegal so as to found an action upon it. Ross vs. Truax, 2 Barb., 361; Pettit vs. Pettit, 32 Ala., 288; Collins vs. Merrell, 2 Met. Ky., 163; Valentine vs. Stewart, 15 Cal., 387; Gelpeke vs. City of Dubuque, 1 Wal., 221. The statute being void, the sheriff was not lawfully authorized to take this bond and discharge a levy under execution, nor could the debtor under such circumstances lawfully insist upon the release of his property.

In Alabama, it has been held that an act prohibiting the issue of an execution without the written consent of the defendant, until after the expiration of one year from the ratification of a treaty of peace between the Confederate States and the United States, was void, whether tested by the constitution of the United States or that of the Confederate States. Ex parte Pollard, 40 Ala., 77; Hudspeth vs. Davis, 41 Ala., 389.

The judgment for want of a plea should be reversed, and the cause remanded with directions to enter final judgment for the defendants upon the demurrer of the plaintiff to the last plea.

WESTCOTT, J., delivered the following concurring opinion:

I fully concur in the decision of the court upon the points of practice presented by the record. I concur also in the judgment pronounced, but I express no opinion upon any other question raised by the record, except the question

whether there has been any breach of the condition of the bond in this case. It appears from the plea that the bond was given under the statute of Dec. 13, 1861, and by reference to this statute we find the condition to be, to produce the property levied upon twelve months after peace was made between the Confederate States and the United States.

It is contended that the language of the statute, and of the bond, should be held to mean " twelve months after the termination of hostilities between the Confederate States and the United States," and that the failure to deliver at that time constituted a breach. The case of Tucker vs. Maxwell, 11 Mass., 143, is cited by the appellee as authority to justify such an interpretation. In that case, the owner of a vessel bound on a voyage had drawn an order in plaintiff's favor, payable on the vessel's return, in part payment for the cargo, and the plaintiff had given a receipt in full for the goods sold. It was held, that while upon the order itself no action could be maintained against the drawer except upon the return of the vessel from the voyage, yet that he could recover upon the original demand, as the giving of the receipt was not, in that case, a release, unless there was proof that the plaintiff was to depend, at all events, for payment of the sum on the vessel's return.

This case is, therefore, rather against the position taken by the appellee, the court holding that so far as the order was concerned there could be no recurrence to the drawer except upon the terms of the draft itself, that is, on the return of the vessel from the voyage, and to apply the principle to the case under consideration, there could be no breach of the condition of the bond except upon a failure to produce the property levied upon, in the event stated, which never had happened, and consequently there has never been any breach.

The effect of a somewhat similar instrument was stated in the case of Palmer vs. Pratt, 9 Eng. Com. Law, 374. In

37

this case a bill was drawn payable thirty days after the arrival of the ship Paragon at Calcutta, and the court say, " In the record it appears it was only payable at thirty days after the arrival of the ship Paragon, so that if the ship did not arrive the bill would never be paid."

In Thorington vs. Smyth, lately decided in the Supreme Court of the United States, Chief Justice Chase, in delivering the opinion of the court, incidentally considered the nature of a somewhat similar instrument. In speaking of Confederate notes he says, in substance, that there could be no payers except in the event of a successful revolution, as upon their face they were made payable only after the ratification of a treaty of peace between the Confederate States and the United States of America. Now, upon the face of this bond there could never be a breach of its condition except in the event of success upon the part of the Confederate States, and a peace made and proclaimed between them and the United States. We are asked to hold that a breach occurs upon the happening of precisely the reverse event, viz : a failure of the Confederate States and the overthrow of its forces. We know of no principle of law which authorizes a court to construe a statute in the light of events happening subsequent to its enactment. The conceived evil, which the statute proposed to remedy, was a sale of property under legal process during war. That such was its purpose is admitted.

The Legislature might readily have enacted a statute framed in such language as to provide for the contingency of failure, or affected by feelings which would not tolerate the idea of failure, and looking only to the event of success, the language of the act could certainly limit the obligation of the sureties to that event alone.

If the Legislature has neglected to provide for the contingency of failure, and expressly required the production of the property only in the event of success, how can we extend the obligation ?

If the Legislature, in providing a remedy for the conceived evil, expressly omits to provide for one of two contingencies, how can we construe the act to embrace both? I conceive that such a contingency as failure, at the time of the passage of the act, was not contemplated by the Legislature, nor is it probable that any of the parties to the bond indulged such an idea at that time.

I know of no authority, nor any principle of law, which would justify us in enlarging the obligation of the sureties upon this bond to the extent desired by the appellee, and I think the judgment of the Circuit Court should be reversed for this reason.