HENRY M. SLIOSBERG, Respondent, *v.* NEW YORK LIFE INSURANCE COMPANY, Appellant.

Constitutional law — comity — insurance — contract — stay — section 169-a of Civil Practice Act providing for stay of action on insurance contract made by American corporation payable in Russian roubles or in Russia, unconstitutional — Russian citizen not barred from bringing action in this State by non-recognition by this government of Russian Republic — section 169-a not intended to withdraw from aliens their right to sue — obligation of contract not wholly Russian — statute may not be upheld as emergency law.

1. Section 169-a of the Civil Practice Act, added by chapter 232 of the Laws of 1926, providing for a stay of any action, counterclaim, setoff or defense founded upon or growing out of a contract of insurance, made prior to November 7, 1917, by an insurance company of the United States, and payable in Russian roubles or to be performed in whole or in part within the territory of the former Russian Empire, is violative of the provision of section 10 of article 1 of the Federal Constitution that no State shall pass any law impairing the obligation of contracts.

2. The Russian Republic, not having been recognized by the government of the United States, might not maintain an action in the courts of this State, but that fact did not debar the plaintiff herein, even though he were at the time a Russian citizen, from bringing this action to recover moneys promised to be paid upon a life and endowment policy issued by defendant.

3. Section 169-a cannot be justified as a " legislative fiat " withdrawing from aliens that right by which they are permitted to maintain actions in this jurisdiction. The enactment was not intended to withdraw from aliens their right to sue. It relates to any cause of action of the class designated brought by any person, whether a citizen or an alien, and purports merely to stay such actions, not to forbid their being brought.

4. A contention that the obligation of the contract was Russian, the attempted impairment of which by a New York statute was not unconstitutional, cannot be sustained. The " obligation of a contract " rests upon the law of the State which, regardless of the volition of the promisors, compels them to make performance. The contract

of insurance in suit, though issued in Russia, made subject to Russian laws, guaranteed by assets deposited in Russia and, as to death benefits, payable in that country, nevertheless, carried with it obligations created by the laws of the State of New York, which were impaired by the statute suspending for an indefinite period all proceedings to enforce them.                                              ...

5. Nor may the statute be upheld as an emergency law enacted to protect the lives, health, morals, comfort or general welfare of the people.  There is no emergency.  The prompt collection through the process of our courts of overdue insurance moneys payable in roubles in Russia, would not have involved a calamity either public or private, nor does the public weal require that honest creditors should be made to abide the time when a law, inherently unjust and confiscatory, may become an effective weapon of defense through recognition by this government of the governmental power that enacted it.

*Sliosberg* v. *New York Life Ins. Co.*, 217 App. Div. 67, affirmed.

(Argued January 26, 1927; decided March 1, 1927.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court, in the first judicial department, entered May 27, 1926, denying a motion for a stay of proceedings under section 169-a of the Civil Practice Act.

The following questions were certified:

" 1. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 10 of article 1 of the Constitution of the United States, that no State shall pass any law impairing the obligation of contracts?

" 2. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 1 of article XIV of the articles in addition to and amendment of the Constitution of the United States, that no State shall deprive any person of property without due process of law?

" 3. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 1 of article XIV of the

articles in addition to and amendment of the Constitution of the United States, that no State shall deny to any person within its jurisdiction the equal protection of the laws?

" 4. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 6 of article I of the Constitution of the State of New York, that no person shall be deprived of property without due process of law, nor shall private property be taken for public use without just compensation?

" 5. Would section 169-a of the Civil Practice Act, as sought to be applied by the defendant in this action, contravene the provision contained in section 1 of article III of the Constitution of the State of New York, that ' the Legislative power of this State shall be vested in the Senate and Assembly? '

" 6. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision contained in section 1 of article VI of the Constitution of the State of New York, that ' the Supreme Court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or hereafter may be prescribed by law not inconsistent with this article? '

" 7. Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 2 of article VI of the Constitution of the State of New York, that ' the several Appellate Divisions, except as hereinafter provided, shall have and exercise such original or appellate jurisdiction as is now or may hereafter be prescribed by law? ' "

*Charles E. Hughes* and *John Foster Dulles* for appellant. It is clearly established that a stay law which is reasonable as a conservatory measure is not unconstitutional. (*Antoni* v. *Greenhow,* 107 U. S. 769; *Von Hoffman* v. *Quincy,* 4 Wall. 535.)    In no event does a change of the

remedy in this country impair the obligation of a contract made and to be performed in and governed by the law of a foreign nation and which expressly provides for resort exclusively to the courts of the foreign nation. (*Selover* v. *Walsh*, 226 U. S. 112; *Northwestern Ins. Co.* v. *McCue*, 223 U. S. 234; *Antoni* v. *Greenhow*, 107 U. S. 769; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Gunn* v. *Barry*, 15 Wall. 610; *Walker* v. *Whitehead*, 16 Wall. 314; *Barnitz* v. *Beverly*, 163 U. S. 118; *Bronson* v. *Kinzie*, 1 How. [U. S.] 311.) The plaintiff is a non-resident alien and as such has no " right " to sue in any American court. (*Russian Republic* v. *Cibrario*, 235 N. Y. 255; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99; *Disconto, etc.*, v. *Umbreit*, 208 U. S. 570; *Bank* v. *Earle*, 13 Pet. 519; *Mairano* v. *B. & O. R. Co.*, 213 U. S. 268; Story on Conflict of Laws [6th ed.], 35.)

*Albert Ottinger*, Attorney-General (*Claude T. Dawes* and *Clarence C. Fowler* of counsel), for Superintendent of Insurance.

*John W. Davis* and *David E. Hudson* for Equitable Life Assurance Society, *amicus curiæ*.

*Walter H. Pollak*, *Ruth I. Wilson* and *Frederic C. Pitcher* for respondent. Section 169-a of the Civil Practice Act, as applied to these actions, violates the prohibition contained in article I, section 10, of the Constitution of the United States, that no State shall pass any law impairing the obligation of contracts. (*Gregonis* v. *P. & R. Coal & Iron Co.*, 235 N. Y. 152; *Kent* v. *Universal Film Mfg. Co.*, 200 App. Div. 539; *Stone* v. *Penn Yan*, 197 N. Y. 279; *Howarth* v. *Angle*, 162 N. Y. 179; *Russian Republic* v. *Cibrario*, 235 N. Y. 255; *Palmer* v. *DeWitt*, 47 N. Y. 532; *Crashley* v. *Press Publishing Co.*, 179 N. Y. 27; *Georgia* v. *Brailsford*, 3 Dall. 1; *Hughes* v. *Edwards*, 9 Wheat. 489; *Bank of Augusta* v. *Earle*, 13

Pet. 519; *Peabody* v. *Hamilton,* 106 Mass. 217; *Roberts* v. *Knights,* 7 Allen, 449.)

*Louis Marshall* and *James Marshall, amici curiæ.* Chapters 232 and 452 of the Laws of 1926 are in contravention of section 10 of article I of the Constitution of the United States in that they impair the obligation of contract, and they are unconstitutional and void. (*Joint Stock Co.* v. *Nat. City Bank,* 240 N. Y. 368; *Murphy* v. *Second Russian Ins. Co.,* 240 N. Y. 554; *First Russian Ins. Co.* v. *Beha,* 240 N. Y. 601; *Louisiana* v. *New Orleans,* 102 U. S. 203; *McCracken* v. *Hayward,* 2 How. [U. S.] 607; *Bronson* v. *Kinzie,* 1 How. [U. S.] 311; *Kener* v. *La Grange Mills,* 231 U. S. 215; *White* v. *Hart,* 13 Wall. 646; *Edwards* v. *Kearzey,* 96 U. S. 606; *Green* v. *Biddle,* 8 Wheat. 1; *Barnitz* v. *Beverly,* 163 U. S. 118; *Daniels* v. *Tearney,* 102 U. S. 415.)

*Borris M. Komar, amicus curiæ.* State legislation impairing the obligation of a foreign transitory contract is unconstitutional as contravening article 1, section 10, of Federal Constitution. (*Cook* v. *Moffat,* 5 How. 295; *Baldwin* v. *Hale,* 1 Wall. 223; *Hawley* v. *Hunt,* 27 Iowa, 303; *Evans & Co.* v. *Sprigg,* 2 Md. 457; *Beers* v. *Rhea,* 5 Tex. 349; *Phœnix Nat. Bank* v. *Batcheller,* 151 Mass. 589; *Western Nat. Bank* v. *Reckless,* 96 Fed. Rep. 70; *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Canada Southern R. R. Co.* v. *Gebhard,* 109 U. S. 527; *McClement* v. *Order of Foresters,* 222 N. Y. 470; *Brown* v. *Equitable Life Assur. Soc.,* 142 Fed. Rep. 835.)

*Osmond K. Fraenkel* and *Charles Recht* for Russian Policyholders, Inc., *amicus curiæ.* The impairment of contracts clause in the United States Constitution applies to contracts made outside the State whose laws are being considered, whether the contract was made within or without the United States. (*Western Nat. Bank* v.

*Reckless,* 96 Fed. Rep. 70; *Sturges* v. *Crowninshield,* 4 Wheat. 122; *McMillan* v. *McNeil,* 4 Wheat. 209; *Ogden* v. *Saunders,* 12 Wheat. 213; *Boyle* v. *Zacharie,* 6 Pet. 635; *Suydam* v. *Broadrax,* 14 Pet. 67; *Cook* v. *Moffat,* 5 How. [U. S.] 295; *Baldwin* v. *Hale,* 1 Wall. 223; *Denny* v. *Bennett,* 128 U. S. 489; *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60.)

*Frederick B. Campbell* and *Paul C. Whipp* for First Russian Fire Insurance Company et al., *amici curiæ.* The act plainly impairs the obligation of the contracts between the several companies above mentioned on the one hand and the State of New York, the Superintendent of Insurance, and the United States trustee of the several companies on the other hand, made at the time the several companies were admitted to transact business in the State of New York. (*Von Hoffman* v. *City of Quincy,* 4 Wall. 535; *Gunn* v. *Barry,* 15 Wall. 610; *Walker* v. *Whitehead,* 16 Wall. 314; *Antoni* v. *Greenhow,* 107 U. S. 769; *Barnitz* v. *Beverly,* 163 U. S. 118.)

*Samuel Greenbaum, Edward S. Greenbaum* and *Jonas J. Shapiro, amici curiæ.*

KELLOGG, J.   This action was brought to recover, upon a twenty-year life and endowment policy issued by the defendant on October 24th, 1901, certain moneys thereby promised to be paid. The action was begun, by the service of a summons and complaint, in April, 1925. No answer to the complaint was served by the defendant. In lieu of answering, the defendant presented an application to the Appellate Division to stay the action until the expiration of thirty days next following the recognition *de jure* of a government of Russia by the government of the United States. The application was made under section 169-a of the Civil Practice Act, a section which was added to the act by chapter 232 of the Laws of 1926.

The provisions of that section, so far as material, are as follows: " Sec. 169-a. Stay of action on insurance contract payable in Russian roubles. Whenever in any civil action or special proceeding now or hereafter pending in any court of this state, it shall appear that * * * any cause of action, counterclaim, set-off or defense is founded upon or grows out of any contract of insurance made or entered into prior to November seventh, nineteen hundred and seventeen, by any insurance company organized under the laws of any state of the United States and expressed to be payable in Russian roubles or to be performed in whole or in part within the territorial confines of the former Russian Empire, such action or special proceeding, upon application, as hereinafter provided shall be stayed by order of the court in which the same is pending until the expiration of thirty days next following the recognition *de jure* of a government of Russia by the government of the United States. Such application may be made by any party against whom such cause of action, counterclaim, set-off or defense is asserted at any time after the commencement of the action or special proceeding and prior to the rendition of the judgment or final order therein * * *." The policy sued upon was issued prior to November 7th, 1917. It was issued by an insurance company organized under the laws of the State of New York. It was " expressed to be payable in Russian roubles." It was " expressed to be performed in whole or in part within the territorial confines of the former Russian Empire." The action brought, therefore, was wholly within the scope of the provisions of section 169-a of the Civil Practice Act. Consequently, if chapter 232 of the Laws of 1926, which added the section, was a valid legislative act, the defendant was entitled to the stay which it demanded. The Appellate Division denied a stay, holding that chapter 232 of the Laws of 1926 was an unconstitutional act in that it violated, among others, the provisions of article 1, section 10, of the

Constitution of the United States, which inhibits State Legislatures as follows: " No State shall * * * pass any * * * Law impairing the Obligation of Contracts."

The complaint and the affidavits and other writings filed upon the application disclose the following facts:

The plaintiff, on October 24th, 1901, the date of the policy, and for many years thereafter, was a Russian citizen. He was expelled from Russia in March, 1920. Having refused to register as a citizen, under the laws of the Soviet Government of Russia, he was forbidden to re-enter its confines. Since June, 1920, he has lived in Paris, France. He came to New York city in March, 1925, and in April of the same year verified the complaint in this action. He returned to Paris in May of the same year. Although it is stated, in one of the affidavits filed, that the plaintiff " is not and never has been, a subject of the Soviet Government of Russia," it is not asserted, and does not otherwise appear, that the plaintiff has lost his citizenship or that he is not now a citizen of the nation of Russia.

The policy in suit bears the signatures, written or printed, of the president and the actuary of the defendant, who were then resident in New York, which are expressed to have been affixed on the 24th day of October, 1901. It was countersigned by the general representative for Russia of the defendant. This countersignature is dated " St. Petersburg November 1st, 1901." It is, therefore, inferable that the policy was issued and delivered to the plaintiff at St. Petersburg on or about November 1st, 1901. The policy insured the life of the plaintiff, in the amount of 20,000 roubles, for a period of twenty years from the 24th day of October, 1901. The terms of the policy expressly bound the defendant to pay " the above mentioned insured amount in St. Petersburg, to the wife of the insured * * * if such death occurs while this policy is in force." They further bound the

defendant as follows: " The company hereby agrees to pay to the insured or to his order the insured amount, *i. e.*, twenty thousand roubles, if the insured is living at 12 o'clock noon on the 24th day of October, 1921." A schedule attached to the policy provided that if the premiums were paid for seventeen years from the date of the policy, the insured, if living, would be entitled to recover a cash surrender value of 16,140 roubles. It appears that the plaintiff did pay all the stipulated premiums down to and including the premium due on October 18th, 1918. It would thus appear that the plaintiff, if entitled to any recovery, is entitled to a judgment for 16,140 roubles, as demanded in the complaint.

The policy in question stated that certain governmental insurance regulations, embodied in a writing known as the " Pravila," a copy of which was attached to the policy, should form essential parts of the contract of insurance. The Pravila required the defendant " in order to guarantee the insured against losses," to deposit an amount specified, in cash or securities, in the Russian State Bank. It also required the defendant to deposit and maintain in such bank other funds termed the " Reserve Fund " and the " Reserve Capital." The amounts required to be deposited in such funds, from time to time, were to be determined by a method of calculation prescribed. The policy contained the following provision: " That the exact fulfillment of the insurance obligations entered into by the company shall be guaranteed by the security deposited and other funds belonging to the company in Russia, *and also by all other property belonging to the company.*" It provided that the business of the company should be conducted through a special branch situated in St. Petersburg; that this branch should be managed by a special chief representative residing permanently at St. Petersburg; that all applications for policies should be made to the chief

representative; that " the acceptance or rejection of insurance depends entirely upon the decision of the home office of the company in New York; " that policies should bear the signatures of the president and the actuary of the company in New York; that they must " be counter-signed by the Chief Representative for Russia; " that all premiums must be paid to the chief representative; that all death notices should be given to him. It con-tained the following clause: " Payment of the amount insured is made either by the Chief Representative of the company at St. Petersburg, or by the local agent, or by transmitting the insured amount direct to the beneficiary."

The Russian Socialist Federated Soviet Republic, which, since the Russian revolution of the year 1917, has exercised governmental powers in Russia (*Wulfsohn* v. *Russian Republic*, 234 N. Y. 372), on December 1st, 1918, decreed that " All kinds of insurance   *   *   *   are declared to be the State monopoly; " that all insurance organizations were subject to liquidation, and that the assets of all such companies became the property of the " R. S. F. S. R." On the 18th day of November, 1919, it decreed that " All kinds of life insurance (capitals and profits, in the R. S. F. S. R.) are cancelled," and that " All the contracts with life-insurance Companies and Savings-Banks for life-insurance, capitals and profits are cancelled." Pursuant to these decrees, all the assets of the defendant, situate in Russia, were forcibly seized and taken over by the Russian Soviet government. The defendant has ever since ceased to maintain an office or to do an insurance business in Russia.

The Russian Socialist Federated Soviet Republic, not having been recognized by the government of the United States, might not have maintained an action in the courts of the State of New York. (*Russian Republic* v. *Cibrario*, 235 N. Y. 255.) That fact, however, did not debar this plaintiff, even though he were, at the time, a Russian

citizen, from bringing this action in the courts of this State. Thus, in *Joint Stock Company* v. *National City Bank* (240 N. Y. 368) jurisdiction of an action, brought by a Russian corporation, after the Soviet government had been established, was entertained. The right of the plaintiff to bring suit was grounded upon comity, not the comity of courts, but the comity of nations. (*Bank of Augusta* v. *Earle*, 13 Peters, 519.) Suits brought by alien corporations and individuals had for so long a period been permitted that the right of the plaintiff to sue had become fixed. The right of the plaintiff was such that "unless restrained by legislative fiat no court may now deny it." (*Russian Republic* v. *Cibrario, supra.*) That the statute under which the defendant made this application was not intended as an act withdrawing from aliens their right to sue is apparent from its contents. Thus, the statute is not in terms limited to actions brought by alien suitors. It relates to any cause of action of a certain class brought by any person, whether a citizen or an alien. The bringing of a suit, whether by an alien or other person, is not forbidden. On the contrary, it is provided that the application for a stay must be made "after the commencement of the action or special proceeding." It does not require that suitors already in court, as was this plaintiff, should be turned out of court and that their actions should be discontinued. On the contrary, it purports merely to stay actions until the happening of a certain event; after the occurrence of that event, suits, whether by aliens or other persons, are to be permitted to continue. We think that the enactment cannot be justified as a "legislative fiat" withdrawing from aliens that right by which they are permitted to maintain actions in this jurisdiction.

The policy sued upon was issued in Russia; it was made subject to Russian laws; it was guaranteed by assets required to be deposited in a Russian bank; the death benefits payable thereunder were payable in Russia

at the offices maintained therein by the defendant. Upon these facts, and others, the appellant erects the argument that the obligation of the contract was a Russian obligation, the attempted impairment of which, by a New York statute, was not unconstitutional. The obligation of a contract, within the meaning of the limitation, does not find its sanction merely in the conscience or honor of the promisors; it rests upon the law of a sovereign State which, regardless of the volition of the promisors, compels them to make performance. " What is it, then, which constitutes the obligation of a contract?  *  *  *  it is the law which binds the parties to perform their agreement," said WASHINGTON, J., in *Ogden* v. *Saunders* (12 Wheat. [U. S.] 256).  " The obligation does not inhere, and subsist in the contract itself, *proprio vigore,* but in the law applicable to the contract," said TRIMBLE, J., in the same case.  " The law binds him [a contracting party] to perform his undertaking, and this is, of course, the obligation of his contract," said MARSHALL, Ch. J., in *Sturges* v. *Crowninshield* (4 Wheat. U. S. 196).  We think, for several reasons, that the contract of insurance in question involved obligations created by the laws of the State of New York.   (1) The defendant is a New York corporation. Its authority to make the contract sued upon was derived exclusively from the laws of the State of New York, which created it.  Every restriction upon the defendant's contractual power, imposed by those laws, followed the defendant into every jurisdiction where it undertook to contract.  The plaintiff, in contracting with the defendant in Russia, impliedly subjected himself to the laws of the State of New York. " He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony." (*Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527, 538.)

Again, it was said in that case: " But wherever it [a corporation] goes for business it carries its charter, as that is the law of its existence." The contract in question, therefore, carried with it an obligation, the original source of which was the law of the defendant's creation. (2) Moreover, while the policy in question was delivered to the plaintiff in Russia, its provisions were drafted by the defendant at the home office in New York city. The Pravila provided that the " acceptance or rejection of insurance depends entirely upon the decision of the home office of the company in New York." The particular policy sued upon was submitted to the home office and received its approval. Therefore, while, technically, the policy was issued in Russia, the assent of the defendant, which bound it to perform the terms of the contract, was given in New York city. (3) Again, it is not the fact that the contract of insurance was by its terms performable in Russia. The death benefits, provided for by the contract, were payable in St. Petersburg. This plaintiff, however, is not suing to recover death benefits. He has survived the period during which his life was insured. His suit is to recover the surrender value of his policy, under that provision of the contract whereby the defendant, without restriction as to place of performance, in general terms agreed " to pay to the insured or his order the insured amount, *i. e.,* twenty thousand roubles, if the insured is living at 12 o'clock noon on the 24th day of October, 1921." The Pravila provided that the obligation of the contract was guaranteed not only by the funds deposited in Russia but " also by all other property belonging to the company." Self-evidently, the general promise and the guaranty contained in the words quoted required, for their complete enforcement, the compelling power of the laws of other jurisdictions. The appropriate jurisdiction for their enforcement was the State of New York, where the defendant was domiciled. (*Blackstone* v. *Miller,* 188

U. S. 189, 205.)   In that case HOLMES, J., said: " What
gives the debt validity?   Nothing but the fact that
the law of the place where the debtor is will make him
pay."   It has been held that a contract originating in
the State of Kansas, as a part of its obligation, carries
with it the laws of New Jersey, the domicile of the
promisor, so that a statute of the latter State, with-
drawing all remedies for the enforcement of the contract,
violates the constitutional limitation.   (*Western National
Bank* v. *Reckless,* 96 Fed. Rep. 70.)   In that case a
creditor of a Kansas corporation brought suit in New
Jersey against a stockholder of the corporation, residing
in New Jersey, to recover upon an obligation imposed
upon all stockholders by a Kansas statute.   A statute
of New Jersey, forbidding a recovery in all such cases,
was held to impair the obligation of the contract and to
be unconstitutional.   For all these reasons we think that
the contract of insurance in suit carried with it obligations
resting in the laws of the State of New York; that chapter
232 of the Laws of 1926, if it withdrew, substantially,
all remedies for the enforcement of the contract, impaired
an obligation of the contract which had its source and
sanction in the laws of the self same State.

The obligation of a contract, which may not be impaired,
does not include the particular remedies provided by a
State for its enforcement at the time of the inception of
the contract, so that the same are made immune from
alteration or modification.   The withdrawal of all
remedies, however, does impair the obligation.   Other-
wise the owner of a broken promise would find his cause
of action to be nothing more than that " metaphysical
subtlety " (to borrow an expression of Professor Ames —
see Lectures on Legal History, p. 199), " an immortal
right to bring an eternally prohibited action."   More-
over, a substantial impairment of a means of enforcement
is an impairment of the contract obligation.   (*Sturges* v.
*Crowninshield,* 4 Wheat. [U. S.] 122; *McCracken* v. *Hay-*

*ward,* 2 How. [U. S.] 608; *White* v. *Hart,* 13 Wall. [U. S.] 646; *Edwards* v. *Kearzey,* 96 U. S. 595; *Bronson* v. *Kinzie,* 1 How. [U. S.] 311; *Penniman's Case,* 103 U. S. 714.) In the case last cited the Supreme Court said: "The general doctrine of this court on this subject may be thus stated: In modes of proceeding and forms to enforce the contract the Legislature has the control, and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right." Statutes suspending, for an indefinite period, all proceedings to enforce a contract have very generally been held to be unconstitutional. Thus, statutes, passed by the Southern States during the Civil War, prohibiting the issuance of executions upon judgments until the expiration of twelve months from " the ratification of a treaty of peace between the United States and the Confederacy," have been held to impair the obligation of contracts. (*Hudspeth & Co.* v. *Davis,* 41 Ala. 389; *Garlington* v. *Priest,* 13 Fla. 559; *The Sequestration Cases,* 30 Texas, 688; *Burt* v. *Williams,* 24 Ark. 91.) A statute providing that an execution upon a judgment in a suit to recover upon a note or contract to pay money shall not be issued " until otherwise provided by law " impairs the obligation of contracts. (*Barnes* v. *Barnes,* 53 N. C. 333.) In *Daniels* v. *Tearney* (102 U. S. 415) the United States Supreme Court declared a law of Virginia, which forbade the issuance of an execution upon a judgment " until otherwise provided by law," to be unconstitutional. On the other hand, it has been held that a statute forbidding the rendition of a judgment until the lapse of one year after suit brought does not impair the obligation of a contract. (*Pollard* v. *Woods,* 40 Ala. 77.) Two interesting cases in the courts of Pennsylvania have arisen. In the one case it was held that a statute staying civil process against any person in the service of the United States during the Civil War for the term of such service and thirty days thereafter,

where the maximum term of enlistment was three years, did not impair a contractual obligation and was constitutional. (*Breitenbach* v. *Bush,* 44 Penn. St. 313.) In a later case, in view of the fact that the enlistments, by a subsequent act of Congress, had become enlistments " during the war," the statute was held unconstitutional. (*Clark* v. *Martin,* 3 Grant's Cases, 393.)   In the *Breitenbach* case the court said: " We hold any law to be constitutional which gives a stay for a time that is definite and not unreasonable, but unconstitutional if the stay be for an indefinite time, or for a time that is unreasonable, though definite."   In our case the statute requires that actions of a certain class be stayed until thirty days after " the recognition *de jure* of a government of Russia by the government of the United States."   In other words, the actions are to be stayed " until the happening of an event which may never happen," as said in *Burt* v. *Williams* (*supra*).   The great weight of authority is to the effect that a State imposing such a stay impairs the obligation of contracts and violates the constitutional limitation.

All contracts are made subject to the exercise by government of a sovereign right to legislate for the protection of " the lives, health, morals, comfort and general welfare of the people."   (*Manigault* v. *Springs,* 199 U. S. 473.) That the government may be required, in times of public stress, so to legislate as to nullify private contracts is an implied term of the law of every contract, so that such legislation, if enacted, does not impair the obligation of the contract within the meaning of the limitation. (*Marcus Brown Co.* v. *Feldman,* 256 U. S. 170.)   In *People ex rel. Durham R. Corp.* v. *La Fetra* (230 N. Y. 429, 444) this court said: " Emergency laws in time of peace are uncommon but not unknown.   Wholesale disaster, financial panic, the aftermath of war (*Hamilton* v. *Kentucky Distilleries & W. Co.,* 251 U. S. 146, 161), earth-

32

quake, pestilence, famine and fire, a combination of men
or the force of circumstances may, as the alternative of
confusion or chaos, demand the enactment of laws that
would be thought arbitrary under normal conditions."
We have here no such emergency.   " Confusion or chaos "
would not have resulted if the statute in question had not
been passed.   The prompt collection, through the process
of our courts, of overdue insurance moneys payable in
Russia, in Russian roubles, would not have involved a
calamity, either public or private; not public, since the
policyholders of two insurance companies would alone
have been affected; not private, for the compulsory
satisfaction of honest debts by debtors amply able to pay
cannot be regarded as catastrophic in any sense.   We
do not mean to say that this defendant has presently no
defense to this action.   That question is not now involved.
For, the defendant is not now urging that the Soviet
decrees canceling all Russian insurance policies are bind-
ing upon this plaintiff, a Russian citizen resident in
Russia when the decrees were passed.   On the contrary,
it is urging that the stay law will result in supplying a
defense not now possessed.   Its justification for the law
is that when the Soviet government has been recognized,
if ever it shall be, the Soviet decrees will retroactively
have become effective to its advantage.   And what is
the defense which, in the event that recognition is granted,
will then become available to insurance companies against
holders of policies payable in Russia in Russian roubles?
Not that the contracts of insurance have been fully
performed.   Not that the insurance moneys due have been
paid.   Those defenses, if existent at all, are existent now
and need no statutory aid to make them available.   Not
that the insurance companies have been deprived of their
Russian assets.   That a debtor has lost the wherewithal
to pay is no defense, whether its loss is attributable to sim-
ple robbery or to piracy which has been coated white by
legislation.   The defense will be that the unpaid policy-

holders have lost their causes of action by virtue of decrees, then having legal sanction, which arbitrarily canceled their obligations against such companies without compensation and without substitution of other obligors having the will or the duty to pay. We do not think that the public weal required that honest creditors should be made to abide the time when a law, inherently unjust and confiscatory, enacted by a governmental power, then regarded as barbarous, might become an effective weapon of defense, through the recognition of that power as a worthy member of the society of civilized nations. We think that the statute in question cannot be upheld as an emergency law enacted to protect " the lives, health, morals, comfort and general welfare of the people; " that it was an unconstitutional act in that it provided for stays of actions and proceedings for an indefinite period of time and, therefore, if effective would have impaired the obligation of contracts.

We, therefore, answer in the affirmative question number one: " Would section 169-a of the Civil Practice Act, as sought to be applied by defendant in this action, contravene the provision of section 10 of article 1 of the Constitution of the United States, that no State shall pass any law impairing the obligation of contracts? " Having so answered, it is unnecessary to answer the other questions certified. The order should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Order affirmed, etc.