[S. F. No. 17417. In Bank. June 26, 1947.]

AETNA CASUALTY AND SURETY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and WILLIAM CHARLESWORTH, Respondents.

[S. F. No. 17418. In Bank. June 26, 1947.]

FIREMAN'S FUND INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION anud SIMON O. MacDONALD, Respondents.

[S. F. No. 17419. In Bank. June 26, 1947.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CLARA WYNKOOP, Respondents.

[S. F. No. 17420. In Bank. June 26, 1947.]

INDUSTRIAL INDEMNITY EXCHANGE (an Inter-insurance Exchange) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and R. C. KILLEN, Respondents.

[S. F. No. 17421. In Bank. June 26, 1947.]

CALIFORNIA COMPENSATION INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and FRANK KIDD, Respondents.

[S. F. No. 17422. In Bank. June 26, 1947.]

INDUSTRIAL INDEMNITY EXCHANGE (an Inter-insurance Exchange) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and HARVEY ALLISON, Respondents.

[S. F. No. 17423. In Bank. June 26, 1947.]

STATE COMPENSATION INSURANCE FUND et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and ROBERT DENTON FLEMING, Respondents.

[S. F. No. 17424. In Bank. June 26, 1947.]

STATE COMPENSATION INSURANCE FUND et al., Petitioners v. INDUSTRIAL ACCIDENT COMMISSION and ELWYN ROBERTS, Respondents.

[S. F. No. 17425. In Bank. June 26, 1947.]

STATE COMPENSATION INSURANCE FUND et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and ROBERT L. RICHARDSON, Respondents.

[S. F. No. 17426. In Bank. June 26, 1947.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and BURNS D. LAMB, Respondents.

[S. F. No. 17427. In Bank. June 26, 1947.]

WESTERN NATIONAL INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN W. JANSON, Respondents.

[S. F. No. 17428. In Bank. June 26, 1947.]

LIBERTY MUTUAL INSURANCE COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and GERALD REED, Respondents.

[S. F. No. 17429. In Bank. June 26, 1947.]

INDUSTRIAL INDEMNITY EXCHANGE (an Inter-insurance Exchange) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOE MARTINEZ, Respondents.

Brobeck, Phleger & Harrison, Moses Lasky, Leonard, Hanna & Brophy, Maurice E. Harrison, Keith, Creede & Sedgwick, Donald Gallagher, John H. Black, Edward R. Kay, Claude F. Weingand, George R. Haswell, Thomas F. McGrath, Herlihy & Herlihy, S. Norman Hays and F. Carlton Myers for Petitioners.

R. C. McKellips, John A. Rowe, Jr., Joseph Sheehan and T. Groezinger for Respondents.

Robert W. Kenny, Attorney General, Clarence A. Linn, Assistant Attorney General, Charles A. Son, Charles J. Janigian, Charles P. Scully, George Olshausen, John K. Hagopian and Gladstein, Andersen, Resner & Sawyer as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—This is a proceeding to review an award of compensation made by the Industrial Accident Commission in favor of an injured employee. At the time the employee sustained his admittedly compensable injury, section 4661 of the Labor Code provided that "Where an injury causes both temporary and permanent disability, the injured employee is not entitled to both a temporary and permanent disability payment, but only to the greater of the two." By an amendment effective as of September 15, 1945, the following proviso was added to section 4661: "except that where the temporary disability payment exceeds 25 per cent of the permanent disability payment the injured employee shall be paid 75 per cent of such permanent disability payment in addition to the temporary disability payment." Thereafter the commission made its award allowing compensation pursuant to the terms of the amended statute, with the result that the award was greater than it would have been had the commission applied section 4661 as it read at the date of injury. Twelve additional cases arising from similar factual situations have been consolidated with this proceeding.

The two-fold question to be determined in this proceeding is whether the commission gave retrospective operation to the amended statute by applying it in a case where the injury occurred prior to the amendment and, if so, whether such retrospective application was proper.

"A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." (*American States W. S. Co.* v. *Johnson,* 31 Cal.App.2d 606, 613 [88 P.2d 770]; *Ware* v. *Heller,* 63 Cal.App.2d 817, 821 [148 P.2d 410]; 23 Cal.Jur. 628.) Respondent commission contends, however, that in making its award in accordance with section 4661 as amended, it gave only prospective operation to the amendment. It is argued that the statute deals with the sub-

ject of disability to which the injury is a mere antecedent fact, that there was no right to or correlative obligation for permanent disability compensation at the time of injury but that such right or obligation arose only after the disability was manifest and its existence determined by the commission, and that consequently no existing rights or obligations were affected by application of the amendment even though the injury occurred before its adoption. With this reasoning we cannot agree.

The prior industrial injury was not a mere antecedent fact relating to the permanent disability ensuing therefrom; on the contrary, it was the basis of the right to be compensated for such disability. This is recognized by the amendment itself which begins with the recital "Where an injury causes both temporary and permanent disability." Moreover, it is elementary that an industrial injury is the foundation of rights and liabilities under workmen's compensation laws. (See Lab. Code, § 3600.) It may be true that, with respect to certain procedural matters, proceedings for permanent disability compensation are viewed as separate and distinct from proceedings for temporary disability compensation. (See *Gobel* v. *Industrial Acc. Com.*, 1 Cal.2d 100 [33 P.2d 413]; *Cowell L. & C. Co.* v. *Industrial Acc. Com.*, 211 Cal. 154 [294 P. 703, 72 A.L.R. 1118].) It does not follow, however, that the "cause of action" for permanent disability is separate and distinct from the original industrial injury. (Lab. Code, § 5303.) The employee was entitled to compensation not merely because he became permanently disabled, but because that disability resulted from an injury in the course of and arising out of his employment.

█ Since the industrial injury is the basis for any compensation award, the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery. █ The 1945 amendment of section 4661 increased the amount of compensation above what was payable at the date of the injury, and to that extent it enlarged the employee's existing rights and the employer's corresponding obligations. The amendment is therefore clearly substantive in character, and the commission, by applying it in the present proceedings, gave it a retrospective operation.

The authorities support the conclusion that a statute changing the measure or method of computing compensation for disability or death is given retrospective effect when applied

to disability or death resulting from an injury sustained before the effective date of the statute. (*Holmberg* v. *City of Oakland,* 55 Cal.App. 270, 272 [203 P. 167]; *United Iron Works* v. *Smethers,* 159 Okla. 105 [14 P.2d 380]; *Lynch* v. *State,* 19 Wn.2d 802 [145 P.2d 265]; *Virden* v. *Smith,* 46 Nev. 208 [210 P. 129]; *Polk* v. *Western Bedding Co.,* 145 Pa. Super. 142 [20 A.2d 845]; *Quilty* v. *Connecticut Co.,* 96 Conn. 124 [113 A. 149]; *Stanswsky* v. *Industrial Commission,* 344 Ill. 436 [176 N.E. 898]; see *Hendrickson* v. *Industrial Acc. Com.,* 215 Cal. 82, 84 [8 P.2d 833]; *Hyman Bros. B. & L. Co.* v. *Industrial Acc. Com.,* 180 Cal. 423, 424 [181 P. 784]; *Chaney* v. *Los Angeles County Retirement Bd.,* 59 Cal.App. 2d 413 [138 P.2d 735].) The only case cited in support of the contrary view is *Talbot* v. *Industrial Ins. Com.,* 108 Wash. 231 [183 P. 84, 187 P. 410]. It is sufficient to note that in a subsequent case the same court which decided it stated that the Talbot case ''did not say that the allowance of the increased payment was in 'no sense' a retroactive application of the amendatory act, but simply said that so to apply the amendment did not amount to giving it a retroactive effect *contrary to the intention of the legislature.*'' (*Lynch* v. *State,* 19 Wn.2d 802 [145 P.2d 265, 268].)

It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. (*Jones* v. *Union Oil Co.,* 218 Cal. 775 [25 P.2d 5]; *In re Cate,* 207 Cal. 443 [279 P. 131]; *Pignaz* v. *Burnett,* 119 Cal. 157 [51 P. 48].) It is contended upon behalf of respondents that this rule of statutory construction has no application to procedural statutes, and that section 4661 relates solely to matters of procedure or remedy. *Feckenscher* v. *Gamble,* 12 Cal.2d 482 [85 P.2d 885], *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299 [283 P. 298], *San Bernardino County* v. *Industrial Acc. Com.,* 217 Cal. 618 [20 P.2d 673], and *Davis & McMillan* v. *Industrial Acc. Com.,* 198 Cal. 631 [246 P. 1046, 46 A.L.R. 1095], are relied upon in support of the contention. In those cases, with one exception, it was held that the language of the statutes showed that the Legislature intended them to be applied retroactively, and the court was concerned mainly with the question of whether the Legislature has power to give those laws such retroactive effect. Since the question of the constitutionality of retroactive legis-

lation and the question of the applicability of a rule of statutory construction are distinct (*Ware* v. *Heller,* 63 Cal.App.2d 817, 821 [148 P.2d 410]), these cases are not in point.

*Davis & McMillan* v. *Industrial Acc. Com., supra* at page 638, contains language, quoted from 36 Cyclopedia of Law, page 1201, to the effect that the presumption against retrospective construction does not apply to statutes relating merely to remedies and modes of procedure. (See, also, Crawford, The Construction of Statutes, p. 581.) A different theory is offered to reach the same result in *Morris* v. *Pacific Electric Ry. Co.,* 2 Cal.2d 764, 768 [43 P.2d 276], wherein this court stated that procedural changes "operate on existing causes of action and defenses, and it is a misnomer to designate them as having retrospective effect." (See, also, *Estate of Patterson,* 155 Cal. 626, 638 [102 P. 941, 132 Am.St.Rep. 116, 18 Ann.Cas. 625, 26 L.R.A.N.S. 654] ; *Ware* v. *Heller,* 63 Cal.App. 2d 817, 825 [148 P.2d 410].) In other words, procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. (*Blyer* v. *Hershman,* 156 Misc. 349 [281 N.Y.S. 942, 944].) In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively.

This reasoning, however, assumes a clear-cut distinction between purely "procedural" and purely "substantive" legislation. In truth, the distinction relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. (*Jones* v. *Union Oil Co., supra,* 218 Cal. 775, 777 [change in procedure to obtain judgment liens] ; *In re Cate, supra,* 207 Cal. 443, 448 [change in reinstatement procedure by enactment of State Bar Act] ; *Pignaz* v. *Burnett, supra,* 119 Cal. 157, 160 [change in time to appeal].) The argument that the statute in this case is a procedural law to which the general rule of statutory construction does not apply is but a different statement of the respondent commis-

sion's original contention that it did not give a retrospective application to the amendment. As we have heretofore concluded, the amendment of section 4661 is substantive in its effect, and its operation would be retroactive, since it imposes a new or additional liability and substantially affects existing rights and obligations.

We turn now to the contention that the Legislature intended to give retrospective operation to the 1945 amendment of section 4661. That intention does not appear on the face of the amendment since no express provision was made for its application to cases involving prior injuries. Respondents urge, however, that such intention appears by necessary implication.

It is argued that since the provisions of the Workmen's Compensation Act are to be liberally construed to extend their benefits to injured persons (Lab. Code, § 3203), the legislative intention that the amendment should operate retrospectively must be implied. No authority is cited for this novel doctrine which would require the court to ignore the rule against retroactive operation with respect to statutes increasing benefits to persons favored by remedial legislation. The rule of liberal construction and the rule that statutes should ordinarily be construed to operate prospectively are neither inconsistent nor mutually exclusive. They relate to different aspects of the interpretation of statutes, and are found in most of the codes, including the Labor Code. (Civ. Code, §§ 3, 4; Code Civ. Proc., §§ 3, 4; Pen. Code, §§ 3, 4; Lab. Code, §§ 4, 3202.) It would be a most peculiar judicial reasoning which would allow one such doctrine to be invoked for the purpose of destroying the other. It seems clear, therefore, that the legislative intent in favor of the retrospective operation of a statute cannot be implied from the mere fact that the statute is remedial and subject to the rule of liberal construction. (See *Virden* v. *Smith, supra* [Nev.], 210 P. 129, 130.)

It is also argued that the legislative intent to extend the benefits of the amendment to previously injured workmen must be implied from the fact that the Legislature could not have intended to differentiate between workmen injured before and after the effective date of the amendment. The argument is not persuasive. Every change in the law brings about some difference in treatment as a result of the prospective operation of the amendment. Moreover, the injustice that

might be suffered by an employer if the amendment were applied retrospectively would afford ample basis for an intentional difference in treatment of workmen injured before and after adoption of the amendment.

Finally, it is argued that the amendment was motivated by the need for an increase in disability benefits due to war conditions and economic crises, that such necessity applies to disabled workmen without regard to the date of their injury, and that therefore a retrospective operation must have been intended. There is nothing on the face of the statute which indicates that the economic effect of the war motivated its enactment, and the amendment was not made a part of a general increase in compensation for all compensable injuries, which might indicate an intent to provide for such unusual conditions. In *Schmidt v. Wolf Contracting Co.*, 269 App. Div. 201 [55 N.Y.S.2d 162], affd. 295 N.Y. 748 [65 N.E.2d 568], relied upon by respondents, it was held that a statute increasing both temporary and permanent disability payments for a limited period was intended to operate retrospectively. The court reached its conclusion on the ground that the statute contained an introductory recital ''Because of existing conditions due to war'' which would have been surplusage had the Legislature intended to restrict the increase to employees injured after the effective date of the amendment. The implication from that decision is clear that if, as in the present case, the statute did not contain the quoted language it would have been construed to apply prospectively only.

Our conclusion is that it does not clearly appear from the language of the amended statute, or by necessary implication, that the Legislature intended it to apply in cases where the injury occurred before the effective date of the enactment. On the contrary, it must be assumed that the Legislature was acquainted with the settled rules of statutory interpretation, and that it would have expressly provided for retrospective operation of the amendment if it had so intended. Accordingly the commission improperly gave a retrospective effect to the amendment by applying it to claims arising out of injuries occurring prior to the date of its enactment.

The awards are annulled and the causes are remanded for further proceedings in accordance with this opinion.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion is a product of the reactionary legalistic philosophy of an era preceding the advent of the Workmen's Compensation Laws and is out of harmony with the philosophy underlying the social policy upon which these laws are based. It was because of the prevalence in the courts of this reactionary legalistic philosophy and its devastating effect upon the social and economic welfare of wage earners that Workmen's Compensation Laws were enacted, and their administration was taken away from the courts except for the very limited function of review on legal issues only. This philosophy inheres in the concept that property rights are above personal rights and that laws granting benefits to employees must not be so construed as to affect the status quo adverse to the employer. While this philosophy still has its advocates in our courts and in other branches of our government, it has lost most of its vigor in recent years due to the effort of leaders in liberal thought to improve the condition of those who are required to work for a livelihood in the great industries of our country. It was this liberal thought which placed in our Constitution and on our statute books the Workmen's Compensation Laws.

Mr. Horovitz in his able and enlightening work on Workmen's Compensation Laws makes the following comment relative to the history, theory and growth of compensation acts: "Before the advent of the factory system, with its gigantic machinery and high speeds, huge mines, mills and other industries, bringing large numbers of workers into close proximity with danger,—back in the days of rural and agricultural life of one hundred or more years ago,—serious injuries were relatively few. Men were closer to their employers.

"If the home servant lost an arm the master, out of human sympathy, often provided doctors, financial help and a readjusted job. If he did not, the servant's only recourse was to sue in the regular common-law courts. Here he would often wait two or more years for a jury trial. Meantime his limited savings or public charity bore the burden. Then his lawyer would attempt to show negligence on the part of the employer—only to be defeated in the great majority of cases by the employer's (or his insurer's) defences of contributory negligence, assumption of risk, or the fellow-servant rule. In short, if the worker himself was partly to be blamed, or if a fellow worker and not the employer himself caused the

injury, or if the contract of employment apparently subjected him to the risk of injury—in any of these three situations the worker lost his case.

"*The fellow-servant defense was particularly harmful to workers.* In huge factories and work places it was usually the fellow worker, not the boss himself, who caused the accident. By staying out of the factory the employer usually could avoid liability for all injuries to his men.

"*The creation by the courts, therefore, of the fellow-servant defense was hailed by employers with wide acclaim. As stated by one writer:* 'Very appropriately, this exception was first announced in South Carolina, then the citadel of human slavery. It was eagerly adopted in Massachusetts, then the center of the factory system, where some decisions were then made in favor of great corporations, so preposterous that they have been disregarded in every other state without even the compliment of refutation. It was promptly followed in England, which was then governed exclusively by landlords and capitalists.'

"*No wonder, then, that 80 per cent of the cases were lost or uncompensated;* and in the 20 per cent of successful cases the lawyer's fees, doctor's bills and other expenses often ate up a substantial portion of the award.

"As workers and their union representatives clamored for amelioration of these outmoded court-made rules, some of the liberal courts invented the doctrine of vice-principal (i. e., a person in superintendence was not a fellow employee, and his negligence was that of the employer); and the legislatures passed Employers' Liability Acts, cutting down the value of some of these three defences. *Nevertheless, most of the courts, bound by precedent, continued to grind out pro-employer decisions, and the workers were up in arms.* Workers and their families had the right to vote. Legislators felt the pressure of their constituents.

" 'The workers wanted a system entirely new. It is but fair to admit that they had become impatient with courts of law. They knew and both economists and jurists were pointing out what is now generally conceded—that two generations ought never to have suffered from the baleful judgments of Abinger and Shaw.' What could be done?

"In 1884, Germany, led by Bismarck, had evolved the idea of workmen's compensation legislation. Work injuries for the first time were compensated, not on the basis of negligence

but on their relation to the job. In 1897 England had enlarged the German idea, and had abolished the common law and its amendments and established an entirely new theory—that of workmen's compensation. Liability depended not on who was at fault for the accident, but on whether it arose out of the employment, while the worker was engaged therein. English legal minds evolved the phrase 'personal injury by accident arising out of and in the course of the employment' as the basis of awards. To laymen this simply meant that if the worker was injured at work because of his work he would obtain a certain percentage of his wages during periods of injury-enforced idleness, plus medical care at the employer's (or his insurer's) expense.

"From 1902 onward many legislators clamored for a similar change of law in this country. They argued that the mechanization of the country had made injuries inevitable; that industry and not charity or savings should pay for industrial injuries; that simple justice required the abolition of the old common-law defences for industrial injuries.

" 'Legislate as we may . . . for safety devices the army of the injured will still increase, the price of our manufacturing greatness will still have to be paid in human blood and tears. To speak of the common-law personal injury action as a remedy for this problem is to jest with serious subjects, to give a stone to one who asks for food.'

"A new system was needed, and one that would also help in accident prevention and rehabilitation. Commissions sprang up in many states to study the idea. *Massachusetts debated the question for nine years, and when it finally passed its compensation law in 1911, ten other states had already completed the change to compensation.*

"Halted temporarily by three state courts which declared their acts unconstitutional, and then spurred on in 1917 when the Supreme Court of the United States upheld three different types of acts, the compensation idea spread rapidly. Today 47 out of 48 states (Mississippi standing alone) have compensation acts. In addition, such legislation exists in Alaska, Hawaii and Puerto Rico. Federal workmen's compensation laws now also cover government employees, longshoremen and harbor workers, and private employees in the District of Columbia.

"*The change was not easily made. Opposition developed from many quarters. Insurance companies or carriers who*

*made large profits from common-law coverage of employers at first bitterly opposed the adoption of the English system.* For a short while even the labor unions joined the opposition, then turned about and became its most insistent proponents. Employers, fearing large increased costs, added their powerful opposition voices.

"*Unquestionably, compensation laws were enacted as a humanitarian measure, to create a new type of liability,*—liability without fault,—to make the industry that was responsible for the injury bear a major part of the burdens resulting therefrom. *It was a revolt from the old common law and the creation of a complete substitute therefor, and not a mere improvement therein. It meant to make liability dependent on a relationship to the job, in a liberal humane fashion, with litigation reduced to a minimum. It meant to cut out narrow common-law methods of denying awards.* It made substitute schemes, or substitute-employer plans, except where expressly permitted in the compensation statute under safeguards, illegal and against public policy; or void because of an element of coercion, or as violating the state's insurance provisions; or as additional to, and not a substitute for workmen's compensation benefits; or construed the policy issued as one under which full workmen's compensation benefits were due." (Injury and Death under Workmen's Compensation Laws by Samuel B. Horovitz, pp. 2-10.) (Emphasis added.)

In the light of the foregoing let us analyze the majority opinion in this case. (1) It is there stated: "The 1945 amendment of section 4661 increased the amount of compensation above what was payable at the date of the injury, and to that extent it enlarged the employee's existing rights and the employer's corresponding obligations." That is not a correct statement as it clearly appears that the amount of compensation is not increased in all cases. It is *only* where the temporary disability payment exceeds 25 per cent of the permanent disability payment that the latter is increased. (2) It is also stated that the provision in the Workmen's Compensation Act that its provisions be liberally construed cannot indicate a legislative intent to have the amendment applied retroactively for "It would be a most peculiar judicial reasoning which would allow one such doctrine to be invoked for the purpose of destroying the other." There is nothing "peculiar" about the matter. Many situations arise where conflicting legal principles must be rationalized, such as conflicting presump-

tions and conflicting rules of statutory construction. To illustrate, we have the rule that statutes in derogation of the common law must be strictly construed yet the four original codes require them to be liberally construed. (Code Civ. Proc., § 4; Civ. Code, § 4; Pen. Code, § 4; Pol. Code, § 4.) In the instant case we have a mere court made rule of statutory construction which conflicts with a provision that, contrary to the statement in the majority opinion that it is similar to provisions in nearly all the statutes, specifically requires that "this code shall be liberally construed by the courts *with the purpose of extending their benefits for the protection of persons injured in the course of their employment*" (Lab. Code, § 3202). (Emphasis added.) And all *reasonable doubt* must be resolved in favor of the employees. (*Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 492 [175 P.2d 823]; *Truck Ins. Exchange* v. *Industrial Acc. Com.*, 27 Cal.2d 813 [167 P.2d 705].) How can the employee be given protection or doubts resolved in his favor if the amendment is not applied to injuries occurring prior to the effective date thereof? While there may be a difference of opinion as to what constitutes a liberal construction, it is nothing short of counterfeit logic to say that the construction contained in the majority opinion falls within that category. The construction there given requires the maintenance of the status quo with respect to all employees who suffered an injury prior to the effective date of the amendment. Such a construction is conservative or reactionary and is the antithesis of a liberal construction. The majority insist upon this construction because it might injuriously affect employers and insurance carriers. It can hardly be imagined that any provision of the Workmen's Compensation Act could be given a *liberal construction* without adversely affecting an employer who is self-insured or an insurance carrier. The obvious reason for the enactment of Labor Code section 3202 was to benefit injured employees by extending the benefits of the act as far as possible in their favor in order to relieve their financial distress during the period of disability resulting from an industrial injury. It must be conceded that to so extend such benefits, would injuriously affect the self-insured employer and insurance carriers for employers not self-insured. While this mandate of the Legislature has been disregarded by conservative minded judges in many cases, it is nevertheless a declaration of legislative policy toward the interpretation of the act and should

be given consideration by the courts, and if it had been given consideration in these cases, the awards in favor of the injured employees here involved would be affirmed.

Since the administration of the Workmen's Compensation Act affects the social and economic welfare of injured employees, it is obvious that changing economic conditions, such as wages and living costs, play an important part in accomplishing the objectives contemplated by the Legislature which enacted the law. It must be assumed that the Legislature had in mind these conditions at the time the law was enacted and at the time each amendment thereto was adopted. The sole problem that the Legislature was considering on each of these occasions was the welfare of the injured workman who had suffered disability arising out of an industrial injury. Certainly when it adopted the amendment here involved it had in mind and intended that its provisions should operate to the benefit of those who had suffered disability and whose welfare required the economic advantage afforded thereby. Any other assumption would impute to the Legislature a motive and desire to discriminate against those who had suffered injuries prior to the effective date of the amendment, but whose permanent disability status had not yet been determined. There is no justification whatsoever for such imputation. Obviously the economic welfare of such injured employees would be as greatly affected as one whose injury occurred thereafter. To my mind it is more reasonable to assume that the motivating force behind the enactment of the amendment was the necessity for improving the economic welfare of those presently disabled than those who might suffer disability from injuries occurring in the future. It must be conceded that the amendment here involved was adopted in the light of economic conditions as they existed at that time and that its objective was to grant immediate relief to those who were found entitled to the benefits provided for therein.

(3) In endeavoring to distinguish *Schmidt* v. *Wolf Contracting Co.*, 269 App.Div. 201 [55 N.Y.S.2d 162] (hereafter more fully discussed), the majority opinion states that the legislation there expressly declared that it was necessary to increase the compensation because of the great advance in the cost of living, while here the Legislature made no such declaration. Justice may be blind but it should not be also dumb. Why should the Legislature declare that which every one knows to exist? Certainly a legislative declaration of the pur-

pose of legislation is not necessary where the conditions giving rise to it are patent to all. Furthermore, this court may take judicial notice of the greatly decreased purchasing power of the dollar since 1941.

(4) It is said that ''an industrial injury is the foundation of rights and liabilities under workmen's compensation laws.'' On the contrary the industrial *disability* is the foundation for liability. Merely receiving an injury does not authorize compensation. There must be a disability.

(5) It is asserted that the employer's substantive rights will be adversely affected by the amendment if it is retroactively applied. However, where the disability occurs *after* the amendment became effective, there is no retroactive application regardless of the date of the injury. There is nothing upon which the amendment can operate until there is a disability. This may occur many months, even years, after the injury. (See *Colonial Ins. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 79 [172 P.2d 884]; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.,* 29 Cal.2d 492 [175 P.2d 823]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798].) Furthermore, in the interpretation of the amendment here involved, the majority opinion overlooks at least one controlling factor. It overlooks, and completely disregards, the proposition that the amendment does not add or create an entirely new liability or obligation but simply changes the method of computing permanent disability awards. In other words, there will be many cases, in fact a great majority of cases in which there is both a temporary and permanent disability award, which will not be affected by the amendment, as the amount of temporary disability must exceed 25 per cent of the permanent disability award before the amendment comes into operation. Suppose that instead of this amendment, the Legislature had provided that where permanent disability awards are payable in installments, future installments should bear interest from the date of the award; or suppose the Legislature should provide that where a compensation claim is contested by an employer or insurance carrier and an award is made in favor of the applicant, he is entitled to an allowance for attorney's fees to be paid by the employer or insurance carrier. Certainly such an amendment would be held to apply to pending cases in which awards had not yet been made at the time of the effective date of the

amendment. This proposition is sustained by the case of *Funkhouser* v. *Preston Co.*, 290 U.S. 163 [54 S.Ct. 134, 78 L.Ed. 243], which holds that a statute passed allowing interest on unliquidated damages for breach of a contract where none had existed before could be validly applied to causes of action which had previously accrued. Let us assume further that some new discovery is made in the field of medical science which although expensive, could restore those afflicted with certain injuries to normalcy, and the Legislature should make provision in the Workmen's Compensation Act that employees so afflicted would be entitled to such treatment at the expense of the employer or insurance carrier. Could it be said that such an amendment would not be applicable to pending cases where the employee was still receiving medical treatment at the expense of the employer or insurance carrier and was still under the jurisdiction of the Industrial Accident Commission? I do not believe that the most reactionary 'mind could say that such a provision would not be applicable to pending cases. In other words, such amendments operate upon existing liability, and so long as such liability exists, amendments increasing or reducing liability should operate in presenti regardless of when the injury occurred which created the liability.

Turning to the cases and looking at the matter affirmatively, I believe only one result is reasonable. The amendment is set forth in the majority decision. In these cases the Industrial Accident Commission made awards after the effective date of the amendment computing and allowing compensation for the permanent disability suffered by said employees in accordance with the amendment rather than the preexisting law although the industrial injuries which ultimately resulted in the permanent disability occurred before the effective date of the amendment. Typical of the cases here involved is the one in which the applicant-employee Charlesworth suffered a compensable injury in 1942. Compensation was paid until January 3, 1945. After hearing in August, 1945, on application for adjustment of compensation, the commission, in March, 1946, found that $3,825 in compensation had been paid; that the employee had 64 per cent permanent disability and was entitled therefore to $6,400; that the compensation insurance carrier was entitled to a credit of only 25 per cent of the $6,400, or $1,600, requiring it to pay $4,800 for the permanent disability in addition to that already paid for the temporary disability, or a total of $8,625. Under the law prior to the amendment it would pay a

*total* of $6,400 inasmuch as the permanent disability award was greater than the temporary disability award of $3,825, or, stated another way, it could deduct the sum of $3,825 from the sum of $6,400, leaving a balance of $2,575.

The major contentions of petitioners (corporate insurance carriers and self-insured employers) are: (1) that the commission has given retroactive effect to the amendment which is contrary to the rule of statutory construction that a statute will not be construed to operate retrospectively unless it is expressly made so to do, and (2) that giving such effect to the amendment it is unconstitutional, or at least, its validity is doubtful and for that reason it should be construed as prospective in operation.

It is no doubt true that there exists the firmly established rule of statutory construction that a statute will not be given a retroactive effect unless the legislation requires it, and that in cases where, to apply an act retroactively, would impair the obligation of a contract, destroy a vested right or violate the due process clause, such rule may be said to have a constitutional law aspect. The latter aspect really involves a question of whether there has been an impairment of a constitutional right, the same as in any other case, and the retroactive feature as a factor is of small consequence. Considering only, however, for the present, its pertinency as a rule of interpretation of legislation, and assuming that if the amendment here involved is applied to a permanent disability where the injury occurred prior to the effective date of the amendment, it is being given retroactive effect, such rule is nothing more than one element in ascertaining the correct effect and scope of the operation of the legislation. There are several other factors which are of controlling significance.

First, the wording of the amendment, together with the portion which is not amended, may reasonably be said to apply even though the injuries occurred prior to its effective date. The old provision with reference to deducting temporary disability payments from permanent disability payments remains the same. An exception is established by the amendment, that is, that where the temporary disability payment is 25 per cent or more of the permanent disability award, then 75 per cent of the latter is payable in addition to the temporary disability payment. In other words, the right of deduction is not wholly abrogated. It is still effective where the required percentage

is not reached. In the instant cases the awards of the commission were not made until *after* the amendment, and it was not until then that there existed an occasion for applying the computation authorized by the amendment. In *San Bernardino County* v. *Industrial Acc. Com.*, 217 Cal. 618, 627 [20 P.2d 673], this court considered the effect of an amendment to the workmen's compensation law which authorized the commission to apply against the employer's liability for compensation, the amount of any recovery by the employee from a third party tort feasor where the recovery was by settlement instead of legal action. Prior thereto the law provided for the assertion of a lien by the employer where there was an action to recover by the employee but no provision was made as to settlement out of court. In deciding that the amendment did apply to a case *where the injury occurred prior to the effective date of the amendment, the court said:* "In 1931, following the decision in the Jacobsen case, the legislature amended section 26 of the Workmen's Compensation Act to provide expressly for the power denied in that case. The relevant provision now reads: 'The Commission is empowered to and shall allow a credit to the employer to be applied against his liability for compensation the amount of any recovery by the employee for his injury, either by settlement or after judgment, that has not theretofore been applied to reimburse the employer.' While *the injury to* Mrs. Allen was *sustained prior to the enactment of this amendment, the decision and award of the Commission, which are here attacked, were made after the amendment went into effect.* How, then, could the Commission disregard it in arriving at its determination? *As a matter of interpretation, the amendment in its language plainly applies to any case before the Commission at the time of its effective operation.* There is nothing in its wording to suggest that it was not intended to apply to cases where the injury occurred prior thereto. Nor is there any policy opposed to such application. The amendment was designed to permit the Commission to do what the court theretofore alone could do—prevent double recovery by crediting the employer with the employee's recovery against the third party. Its application in the instant case would avoid a multiplicity of actions and the unfair result already discussed." (Emphasis added.) Likewise in the instant case the language of the amendment (being nothing more than a method of computing the disability payments, temporary and permanent, with respect to their relation to each

other) should apply to awards made after the amendment even though the injuries for which the awards were made, were previous thereto. The time to make that computation is the time of the award, not the time of the injury.

Second, the workmen's compensation law being social legislation, especial attention must be given to the purposes and objects sought to be achieved thereby. It is fundamental that the object sought to be achieved and evil to be remedied are compelling considerations in statutory interpretation. (*Rock Creek etc. Dist.* v. *County of Calaveras,* 29 Cal.2d 7, 10 [172 P.2d 863], and cases there cited.) The policy underlying the workmen's compensation law is set forth in the Constitution. "The Legislature is hereby . . . vested with *plenary* power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons *to compensate* any or all of their workmen for injury *or disability,* . . . A complete system of workmen's compensation includes *adequate* provisions for the *comfort, health and safety and general welfare* of any and all workmen and those dependent upon them for support to the extent of *relieving from the consequences of any injury* . . . sustained by workmen in the course of their employment, irrespective of the fault of any party; . . . full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury; full provision for adequate insurance coverage against liability to pay or furnish compensation; . . . all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government." (Cal. Const., art. XX, § 21.) (Emphasis added.) The essence of workmen's compensation law is to alleviate the effects of the disability. This court said: "The primary purpose of industrial compensation is to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work and *also to bring about his recovery as soon as possible in order that he may be returned to the ranks of productive labor.* By this means society as a whole is relieved of the burden of caring for the injured workman and his family, and the burden is placed upon the industry. That the injured workman and his dependents may be cared for, compensation in the form of disability benefits is provided for by

the act approximating the wages earned by the employee and varying with the degree of disability and dependency.'' (Emphasis added.) (*Union Iron Wks.* v. *Industrial Acc. Com.*, 190 Cal. 33, 39 [210 P. 410].) It must be assumed that the Legislature had the foregoing principles in mind when it amended section 4661, and having that knowledge, it is not to be supposed that it intended to unnecessarily discriminate between groups of workmen suffering permanent disabilities whose injury happened to occur before the effective date of the amendment and those subsequent in time. Such intention is not to be imputed to the Legislature unless absolutely necessary. The Legislature is not presumed to enact harsh, discriminatory or injurious legislation. (See *Schmidt* v. *Wolf Contracting Co.*, 269 App.Div. 201 [55 N.Y.S.2d 162], affirmed 295 N.Y. 748 [65 N.E.2d 568].) There is no magic in making the date of the injury the time for the commencement of the operation of the amendment. It would be equally as plausible to argue that the date of employment is the pivotal factor. The essence of the matter is that industry rather than society as a whole must bear the burden of assisting in the economic and vocational restoration or rehabilitation of workmen suffering from industrial disability. It is the disability that is of first importance. Undoubtedly the Legislature recognized the need for a more adequate provision to enable the permanently disabled employee to rehabilitate himself, reshape his vocational approach to accommodate his disability, and realized that the present high prices of commodities (a fact of which judicial notice may be taken) made it imperative that a greater allowance should be made for permanent disability. While it may have been that in normal times the temporary disability payments would in some measure supply the means necessary to meet the problem of permanent disability, and hence justify the full deduction of the temporary payment from the permanent award, the present decreased purchasing power of the dollar makes pressing and urgent the immediate necessity of increasing the compensation payable to the permanently disabled workmen. If the amendment is to be confined to injuries occurring after its operative date, little is accomplished toward the end to be achieved. Running through the whole policy of workmen's compensation is the concept of the social advantages of caring for those disabled in industry. Such policy is pregnant with the thought that the Legislature may adjust the benefits conferred to meet changing circum-

stances and conditions, a principle with which employers and compensation insurance carriers are or should be cognizant and which they should contemplate. Indeed, broadly speaking, the Legislature has foreshadowed its intent in respect to the foregoing principle. The law has consistently provided: "The commission has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the commission may rescind, alter, or amend any such order, decision, or award, good cause appearing therefor. . . . Such power includes the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated." (Lab. Code, § 5803.) While I do not intimate that under that section the commission could change the law for computing compensation, it is evident by the amendment presently discussed that the Legislature was merely expanding the power of the commission under section 5803 to enable it more adequately to meet conditions as they arise and circumstances as they change, all to attain the fulfillment of the basic social policy implicit in the workmen's compensation law. It must be remembered that we are not confronted here with a radical change in the law. The workmen's compensation law has always provided for compensation for permanent disability. The amendment is not imposing an obligation that did not previously exist. The only change is the method of computing the amount—the effect of and relation between payments for temporary and permanent disability.

Third, it is basic that the workmen's compensation laws should be liberally construed to the end that benefits shall be secured to the workmen. "The provisions of [workmen's compensation laws] . . . shall be liberally construed by the courts with the purpose of *extending their benefits for the protection of persons* injured in the course of their employment." (Emphasis added.) (Lab. Code, § 3202.) (See cases collected 27 Cal.Jur. 260, and Supp.) This is an express mandate by the Legislature that the benefits of the statute shall be extended, that is, construed to secure to all workmen the benefits provided for therein. Certainly when we have an amendment such as is here involved, which may be interpreted to include or to exclude, arbitrarily, benefits to work-

men suffering permanent disability, and the Legislature has by section 3202 instructed this court that the rule of inclusion rather than exclusion should apply, the determination by the majority that the method (fixed by the amendment) for computing the payments for permanent disability does not apply to persons who are found so disabled merely because the injury chanced to occur before the operative date of the amendment, gives the amendment a restrictive effect—gives it a strict interpretation rather than extending the benefits thereof and giving it a liberal interpretation. Thus when we consider all the factors heretofore discussed, together with the principles presently considered, there is no sound basis for the application of the rule that it is presumed the Legislature intends a statute to operate prospectively only. The clear import is to the contrary.

A significant recent case bearing upon the problem is *Schmidt* v. *Wolf Contracting Co.*, 269 App.Div. 201 [55 N.Y.S. 2d 162], supra, affd. 295 N.Y. 748 [65 N.E.2d 568]. There the New York Legislature on April 1, 1944, amended the law dealing with maximum and minimum compensation payments for permanent and temporary disability to provide that: ''Because of existing conditions due to the war compensation for permanent or temporary total disability may be in excess of twenty-five dollars but shall not exceed twenty-eight dollars per week for any period of disability arising out of claims accruing during the year commencing June first, nineteen hundred forty-four.'' (P. 165 [55 N.Y.S.2d].) It was contended that a claimant who became totally disabled before June 1, 1944, was not entitled to the increase in compensation authorized by the amendment commencing on June 1, 1944. In denying that contention the court said, in line with the foregoing discussion herein: ''We have repeatedly said, and so has the Court of Appeals, that the Workmen's Compensation Law is classed as remedial legislation and hence a spirit of liberality should characterize its interpretations in order to effectuate its intent and purpose.

''We are not concerned with the wisdom or the justice of the amendment in question. Our only duty is to ascertain the meaning and intent of the lawmakers. *The intention of the lawmakers is the law. That intention is to be gathered from the necessity or the reason of the enactment.* In the construction of a statute we are not confined to the literal meaning of the words. When the intention can be disclosed from the statute, words may be modified or altered so as to

obviate all inconsistency with such intention. To give this amendment the construction which appellants urge would produce an absurd and illogical result. 'Every interpretation that leads to an absurdity should be rejected.' *Flynn* v. *Prudential Insurance Co. of America,* 207 N.Y. 315, 318, 100 N.E. 794, 795.

"In *People* v. *Ryan,* 274 N.Y. 149, 152, 8 N.E.2d 313, 315, the Court said:

" 'In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to "defeat the general purpose and manifest policy intended to be promoted," all parts of the act must be read and construed together for the purpose of determining the legislative intent, and, if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice, or mischief, or lead to absurdity.' . . .

"A reading of the amendment clearly indicates to us that the Legislature intended that *it should apply to injuries sustained prior to June 1, 1944,* if disability is present and payments are due during the year commencing on that date.

"It is unreasonable to assume that the Legislature intended that a workman who suffers injury on May 31, 1944, is any less affected by the phrase 'because of existing conditions due to the war' than one injured on June 1st of the same year. The disability, if any, in both cases would be present during the year commencing June 1st. Both workmen would be subject to the same existing conditions due to the war and during the same period of time. We cannot attribute to the Legislature an intent to make such an unfair discrimination.

"It is not the injury which must be sustained during the year commencing June 1st but the disability or incapacitation which must occur in order to bring the workman within the provisions of the amendment.

"In enacting the amendment the Legislature recognized the existence of an emergency, 'because of existing conditions due to the war' and provided a remedy. If the Legislature had intended to restrict the increase in awards to workmen injured after June 1st, it could have accomplished that result without the use of the words 'because of existing conditions due to the war.' As to those employees the words are superfluous. We should not assume that the lawmakers inserted

those words in the amendment for no useful purpose. . . .

"When the amendment is read in the light of its spirit and purpose and consideration is given to the condition sought to be remedied as well as the history of the times, it is clear that the legislative intention was to make it applicable to claims for disability accruing during the year commencing June 1st.

"It is not the original claim but the disability which is subject to the time limitation. When the injuries are suffered the period of disability is uncertain. A workman may sustain injuries with no resultant disability in which case no compensation is due. A disability does not arise out of a claim. It is the claim which arises out of the disability.

"If the Legislature intended to limit the force of the amendment, as suggested by appellants, unquestionably it would have used language indicating unequivocally that the increased benefits would be applicable only to those sustaining injuries during the specified year. We think it is unreasonable to assume that the Legislature intended to confer benefits on a small group of workmen sustaining injuries during the year beginning June 1st. . . .

"The Workmen's Compensation Law creates the liability under which compensation is required to be paid by the employer to an injured employee or, in the event of his death, to his dependents. The obligation is purely statutory and does not arise out of an employer-employee relationship. Liability imposed by the Act is neither ex contractu (*Matter of Smith* v. *Heine Boiler Co.*, 224 N.Y. 9, 119 N.E. 878, Ann. Cas. 1918D, 316) nor ex delicto (*Matter of Doey* v. *Clarence P. Howland Co.*, 224 N.Y. 30, 120 N.E. 53).

"The spirit and purpose of the amendment are of material assistance in its interpretation. . . .

"The history of the times and conditions of the country are helpful in construing the amendment. . . .

"In the consideration of the mischief to be remedied by the amendment the intention of the Legislature becomes apparent." (Emphasis added.)

In this state several cases have given consideration to the question as to what events are controlling in determining the effective date of changes in the workmen's compensation law. In *Hendrickson* v. *Industrial Acc. Com.*, 215 Cal. 82 [8 P.2d 833], it was conceded by the commission that an amendment increasing the compensation by 10 per cent when the em-

ployer was wilfully uninsured did not apply to an injury occurring prior to the effective date of the amendment. The case does not represent a holding, and moreover does not constitute a practice on the part of the commission to interpret amendments as prospective only inasmuch as the amendment provided for what was in the nature of a *penalty* against the employer for failure to insure—a punishment to induce him to obey the law rather than, as in the instant case, a furtherance of the policy of the law to extend and make more adequate payments for disability, thus relieving society as a whole of the burden. While it is true that liability for increased compensation imposed in such cases as the wilful misconduct of the employer is compensation to the employee in a broad sense rather than a penalty (*E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180 [193 P. 105, 16 A.L.R. 611]), such liability does not have to do with giving adequate compensation to the employee measured by the cost of attaining rehabilitation, as exists in the case at bar, and thus there is not the same reason for applying it to past injuries. *Pacific Gas & Electric Co.* v. *Industrial Acc. Com.*, 180 Cal. 497 [181 P. 788], and *Worswick Street Pav. Co.* v. *Industrial Acc. Com.*, 181 Cal. 550 [185 P. 953], hold merely that an amendment to the Constitution did not purport to ratify or correct an invalid portion of the statute. The general proposition was stated in *Hyman Bros. Co.* v. *Industrial Acc. Com.*, 180 Cal. 423 [181 P. 784], without any discussion of the controversy involved, that is, it does not appear what contention was made on the subject or what changes if any had been made in the law. In *Great Western Power Co.* v. *Pillsbury*, 170 Cal. 180 [149 P. 35], the statute (Stats. 1911, p. 796) in force when the injury occurred was applied but the new act (Stats. 1913, p. 279) specifically provided that its compensation provision should not apply to any injury sustained prior to its effective date. If anything, this indicates that when the Legislature desires to have the act or amendments limited to future injuries it makes express provision therefor. *Carlsen* v. *Diehl*, 57 Cal.App. 731 [208 P. 150], is not in point as it dealt with a procedural matter. In any event it did not involve the extension of the benefits of the act. *Holmberg* v. *City of Oakland*, 55 Cal.App. 270 [203 P. 167], involving prior rights, did not consider the rule of liberal construction, dealt with an entirely new liability for benefits for injuries, and spoke as

of the future. There was no dispute concerning the matter in *Bay Shore L. Co.* v. *Industrial Acc. Com.,* 36 Cal.App. 547 [172 P. 1128]. In *Reynolds* v. *E. Clemens Horst Co.,* 35 Cal. App. 711 [170 P. 1082], the old law was applied on the theory that the new law by a savings clause continued in effect for the prior injuries. In its holding that the employee has a vested right after the injury by reason of the old law which was repealed, the court ignored the well-established rule that there is no vested right in a right created by statute. (See *Feckenscher* v. *Gamble,* 12 Cal.2d 482 [85 P.2d 885].)

There are cases from other jurisdictions holding that amendments to workmen's compensation laws dealing with the amount of or liability for compensation apply only to injuries occurring subsequent to their effective date. (See 71 C.J. 334, 84 A.L.R. 1244, and supplemental decisions; 40 A.L.R. 1473, and supplemental decisions.) I believe, however, that the social necessity of flexibility in the functioning of workmen's compensation laws, heretofore discussed, was not given sufficient consideration by the courts in deciding those cases.

It is contended that the savings clause in the Labor Code (which contains the workmen's compensation laws) indicates a legislative intent that the amendment is to operate only on injuries occurring subsequent to its effective date. "No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible." (Lab. Code, § 4.) Manifestly that provision was designed to cover nothing more than the original code, inasmuch as many repeals of statutes were effected by it, most of which were restated in the code. It was to prevent the adoption of the code from disturbing existing conditions inasmuch as merely a revision and codification was intended rather than a change in the law. Nor does the provision: "Whenever any reference is made to any portion of this code or of any other law of this State, such reference shall apply to all amendments and additions thereto now or hereafter made," (Lab. Code, § 9) give a different meaning to section 4. Section 9 was aimed at situations where reference is made in one law to another as affecting or governing the procedure or rights provided for in the former. Thus it eliminates the uncertainty of whether the law to which reference was made would be considered as it existed at the time of the reference or as subsequently amended. More-

over, as heretofore seen, because of the nature and basis of the law here involved the rights do not become static.

It is further asserted that the commission having interpreted the amendment as not applying to previous injuries from September, 1945, to January, 1946, is a pertinent factor in interpretation. But the time was short and the rule is established that: "But where there is no ambiguity and the interpretation is clearly erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction. The administrative interpretation cannot alter the clear meaning of a statute." (*California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028].)

It is contended that to apply the amendment to previous injuries is unconstitutional as an impairment of the obligation of contracts, deprivation of vested rights, and a taking of property without due process of law contrary to both the state and federal Constitutions. There is no sound basis for this contention. From the standpoint of the self-insured employer there is no contract. The existing law with relation to the compensation payable to his employees is not a part of the employment contract. If it were, the date of the employment rather than of the date of the injury would be the pivotal time with respect to the law applicable thereto. The obligations and benefits under the workmen's compensation law in California are purely statutory, regulating the status of employer and employee and have no contractual basis. (*Alaska Packers Assn.* v. *Industrial Acc. Com.,* 1 Cal.2d 250 [34 P.2d 716] ; *Alaska Packers Assn.* v. *Industrial Acc. Com.,* 294 U.S. 532 [55 S.Ct. 518, 79 L.Ed. 1044] ; *Quong Ham Wah Co.* v. *Industrial Acc. Com.,* 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190] ; *North Alaska Salmon Co.* v. *Pillsbury,* 174 Cal. 1 [162 P. 93, L.R.A. 1917E 642] ; *Mark* v. *Industrial Acc. Com.,* 29 Cal.App.2d 495 [84 P.2d 1071].) Insofar as the corporation insurance carriers are concerned, their policies, by force of regulation under the Insurance Code, are uniform in providing (or an equivalent thereof) : "The Contract. The obligations of Paragraph One (a) of the policy to which this endorsement is attached, include such Workmen's Compensation Laws as are herein cited and described and none others.

"Divisions IV and V, Labor Code of the State of California (except the increase in any award under the provisions of Section 4553 thereof, . . .) *and all laws amendatory thereof,*

*or supplementary thereto* which may be or become effective *while this policy is in force.* All the foregoing, subject to such exceptions, is, for the purpose of this insurance, called the Workmen's Compensation Law. [Emphasis added.]

"It is further understood and agreed that (subject to the approval of the Insurance Commissioner), the rates of premium are subject to change, if, during the term of this Policy, any amendments affecting the benefits provided by the Workmen's Compensation Laws become effective; such change, if any, to be expressed by an endorsement naming the effective date thereof." Thus the insurance carriers are in no position to complain. Their policies contemplate changes in the law. True, such policies refer to amendments to the workmen's compensation law which become effective while the policies are in force. It may be that the term of such a policy (the term which the premium payment covered) would have expired before the amendment but the policy would still be in force in the sense that the obligation to pay compensation for any disability would continue to exist as long as it was related to an injury occurring during the term of the policy. It cannot be seriously doubted that liability under the policy continues after its specified term or premium period as to disabilities having their inception during the term. The only right which could be claimed to be vested is one to have all payments for temporary disability deducted from the permanent disability award in every case, instead of in only some of the cases, and to a partial extent as is permitted by the amendment. Limiting the extent of the amount of temporary disability payments that may be deducted from permanent disability awards was merely a means to assure that the employee would obtain compensation more nearly consonant with the aims and objects of the workmen's compensation law in the light of changing conditions. It is analogous to enactments increasing or diminishing the damages recoverable in ordinary actions. Retroactive application of such enactments is not unconstitutional. In *Funkhouser* v. *Preston Co.,* 290 U.S. 163 [54 S.Ct. 134, 78 L.Ed. 243], a statute was passed allowing interest on unliquidated damages for breach of contract where none had existed before. The court held that it could be validly applied to causes of action which had previously occurred, stating: "The statute in question concerns the remedy and does not disturb the obligations of the contract. . . . The contractual obligation of appellants was to take and pay for the described

articles; and the law, in force when the contract was made, required that in case of breach appellants should make good the loss sustained by the appellee. *The ascertainment of that loss, and of what would constitute full compensation, was a matter of procedure within the range of due process in the enforcement of the contract.* 'To enact laws providing remedies for a violation of contracts' and 'to alter or enlarge those remedies from time to time,' was within the competency of the legislature. *Waggoner* v. *Flack, supra.* [188 U.S. 595 (23 S.Ct. 345, 47 L.Ed. 609).] The mere fact that such legislation is retroactive does not bring it into conflict with the guarantees of the Federal Constitution (*League* v. *Texas, supra,* p. 161 [184 U.S. 156 (22 S.Ct. 475, 46 L.Ed. 478)]), and when the action of the legislature is directed to the enforcement of the obligation assumed by the parties and to the giving of suitable relief for non-performance, it cannot be said that the obligations of the contract have been impaired. The parties make their contract with reference to the existence of the power of the State to provide remedies for enforcement and to secure adequate redress in case of breach. (*Henley* v. *Myers, supra,* [215 U.S. 373 (30 S.Ct. 148, 54 L.Ed. 240)].)'' (P. 167.) Likewise in the instant cases, the object of the workmen's compensation laws is and always has been to afford full and adequate compensation to injured workmen, and knowledge of such object should be imputed to employers and insurance carriers. The ascertainment of the loss sustained—the measure of compensation—may well be a matter of procedure. (See, also, to the same effect, *United States* v. *Standard Oil Co. of California,* 21 F.Supp. 645; *Fechenscher* v. *Gamble,* 12 Cal.2d 482 [85 P.2d 885].)

My conclusion in these cases need not rest alone upon the foregoing discussion. There is a larger and more significant principle involved. Even assuming that there are contract and vested rights involved, yet the amendment is a valid exercise of the police power. The validity of workmen's compensation laws is unquestioned. The social purposes and aims fall within the general welfare scope of the police power. As we have seen above, the present and urgent need for more adequate and nondiscriminatory compensation for permanent disability to assist in the vocational and economic rehabilitation of the disabled workmen is clear. The nature of workmen's compensation laws is such that a reserved power on the

part of the Legislature to meet current and future exigencies arising from changing conditions should be contemplated. In an overall sense nothing really new has been added by the amendment. Rather the benefits have been extended to more fully accomplish that which has already been done in part. The language in *Home Building & Loan Association* v. *Blaisdell*, 290 U.S. 398, 434 [54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481], is apt: "Not only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end 'has the result of modifying or abrogating contracts already in effect.' *Stephenson* v. *Binford*, 287 U.S. 251, 276 [53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721]. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court. . . . The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. . . . The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. . . . What has been said on that point is also applicable to the contention presented under the due process clause." In *Schmidt* v. *Wolf Contracting Co., supra,* 55 N.Y.S.2d 162, heretofore discussed on the question of the interpretation of the amendment, the contention of unconstitutionality was also made. The court answered that contention as follows: (P. 169) "Liability under the Workmen's Compensation Law does not arise out of contract. That liability has its origin not in contract but in legislative fiat decreed in accordance with constitutional mandate and hence does not violate the contract clause of the United States Constitution.

"Even if it be assumed that liability under the Workmen's Compensation Laws is contractual, the amendment is not thereby violative of the provisions of the Constitution of the United States. The police power of the state may be exercised to affect the due process of law clause as well as the impairment of contract clause of the Federal Constitution.

"The subject matter of workmen's compensation reposes within the control of the Legislature.

"A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority. *Norman* v. *Baltimore & Ohio Railroad Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352; *Union Dry Goods Co.* v. *Georgia Public Service Corporation*, 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309, 9 A.L.R. 1420; *Louisville & N. R. Co.* v. *Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A., N.S., 671.

"The constitutional prohibition that no state shall pass any laws which shall deprive a person of life, liberty or property without due process is not absolute. *Matter of People* v. *Title & Mortgage Guarantee Co. of Buffalo*, 264 N.Y. 69, 190 N.E. 153, 96 A.L.R. 297; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481.

"In the case of *Sliosberg* v. *New York Life Insurance Company*, 244 N.Y. 482, at page 497, 155 N.E. 749, at page 755, in discussing the question of impairment of the obligation of contract the court said:

" 'All contracts are made subject to the exercise by government of a sovereign right to legislate for the protection of "the lives, health, morals, comfort and general welfare of the people." *Manigault* v. *Springs*, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274. That the government may be required, in times of public stress, so to legislate as to nullify private contracts, is an implied term of the law of every contract, so that such legislation, if enacted, does not impair the obligation of the contract within the meaning of the limitation. *Marcus Brown [Holding] Co.* v. *Feldman*, 256 U.S. 70, 41 S.Ct. 465, 65 L.Ed. 877.'

"The amendment in question was enacted in the exercise of the police power of the state and hence violates neither its constitution nor the Federal Constitution. The principle of workmen's compensation is the promotion of public good. *Matter of Petrie, supra* [215 N.Y. 335, 109 N.E. 549]; *Matter of Post* v. *Burger & Gohlke*, 216 N.Y. 544, 111 N.E. 351, Ann.

Cas. 1916B, 158; *New York Central R. Co.* v. *White,* 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A. 1917D, 1, Ann.Cas. 1917D, 629.

"In the case of *Guttag* v. *Shatzkin,* 230 N.Y. 647, at page 650, 130 N.E. 929, at page 930, the court said:

" 'While the states are subject to the contract clause of section 10, article 1 and section 1, article 14, of the United States Constitution, the police power of the states may affect contracts and modify property rights without violation of these provisions. Conceding the health, safety, and morals of its citizens to be involved, and the circumstances to justify a proper interference by the state, neither the contract nor due process of law clause stand in the way. *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309, 9 A.L.R. 1420. These sections of our federal Constitution and the police power of the states harmonize and never conflict. The only question here is one of fact, not one of law: Do the facts call into existence the power reserved to the states to legislate for the safety and health of the people? Within its sphere the police power of the states is not unlike the war power of the nation. Both are rules of necessity, impliedly or expressly existing in every form of government; the one to preserve the health and morals of a community; the other to preserve sovereignty.' "

In view of the foregoing discussion and the authorities cited, and considering the declared public policy of this state toward the workmen's compensation law, and applying the rule of liberal construction enjoined upon us by statute, it cannot be fairly said that the Legislature intended that the amendment here involved should apply to future injuries only. On the contrary every consideration of public policy vouchsafed by the constitutional provision which is the postulate of the workmen's compensation statute, and the statute itself, compels a construction which renders said amendment applicable to existing liability regardless of the date of the injuries out of which such liability arose, which construction, I believe, is obviously in harmony with the intention of the Legislature in the enactment of said amendment.

The awards should be affirmed.

Respondents' petition for a rehearing was denied July 22, 1947. Carter, J., voted for a rehearing.