Filed 3/5/21  Gierut v. Applied Medical Resources Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KETH GIERUT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>APPLIED MEDICAL RESOURCES CORPORATION,<br><br>    Defendant and Respondent. | G057922<br><br>(Super. Ct. No. 30-2018-00964562)<br><br>O P I N I O N |

Appeal from a judgment and order of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed.

Donahoo & Associates and Richard E. Donahoo; Esner, Chang & Buyer and Stuart B. Esner for Plaintiff and Appellant.

Jones Day, Steven M. Zadravecz and Victoria E. Cho; Jones Day and Nathaniel P. Garrett for Defendant and Respondent.

# INTRODUCTION

It is well known that in comedy and romance, timing is everything. It turns out that timing is similarly critical when it comes to a violation of the Fair Employment and Housing Act (FEHA). In this case, a change in the law intervened between appellant Keith Gierut's request for time off because of injuries suffered in a bicycle accident and his termination by his employer, respondent Applied Medical Resources Corporation (Applied), a medical device manufacturing company. When Gierut asked for time off, in December 2015, such a request could not be the basis of a retaliation claim under Government Code section 12940,[1] so when Applied fired him, in January 2016, it could do so legally.

Near the end of a lengthy jury trial, the court granted Applied's motion for nonsuit on Gierut's retaliation cause of action because his request for time off was not protected activity when he made it. The trial went on for two more days. The jury returned a verdict against Gierut; he did not prevail on any of his FEHA claims or on his wrongful termination in violation of public policy cause of action. Gierut has appealed only the trial court's ruling on Applied's motion for nonsuit on the retaliation claim.

We affirm the order granting the motion for nonsuit. An element of a prima facie case for retaliation under section 12940 is protected activity. Gierut's request for time off was not protected activity when he made it. Since this was the sole basis for his retaliation claim, he could not demonstrate two required elements: protected activity and a causal link between protected activity and an adverse employment action. The court properly granted Applied's motion for nonsuit.

# FACTS

Gierut began working at Applied at the end of July 2015, after being unemployed in construction between 2008 and 2011. His last job before being hired at

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Applied, from which he was laid off in March 2014, was with a company that renovated apartment complexes.

Applied hired Gierut as a project manager, in charge of two commercial tenant improvement projects. As a project manager, he supervised the general contractor constructing the tenant improvements at Applied's place of business to make sure the work was being done properly, promptly, and according to contract.

On November 29, 2015, Gierut was riding his bicycle when he collided with a car. He suffered several broken ribs, a concussion, and a large and painful bruise on his thigh. He was taken to the emergency room for evaluation and treatment and released the next day. He obtained a doctor's note dated November 30 allowing him to return to work on December 7, 2015, without restrictions. On December 20, he fell at home and reinjured his leg.

Gierut needed physical therapy treatments to recover from his injuries, and he told his immediate supervisor, Mike Talle, in early December 2015 that he would need time off to go to an appointment. Talle granted this request. Gierut testified, however, that Talle's acquiescence was grudging and that his attitude discouraged Gierut from taking all the appointments he needed.

Applied fired Gierut on January 11, 2016. Talle testified that Gierut's injury and his requests for time off had nothing to do with the decision to fire him. Instead, inconsistent attendance and mistakes made on the job indicated that Gierut did not have the background necessary to be a project manager. As it turned out, Talle was right. Gierut had misrepresented both his experience and his education on his resume.[2]

Gierut sued Applied in January 2018 for several FEHA violations and for wrongful termination in violation of public policy. Among the FEHA claims were causes of action for disability discrimination and for retaliation under section 12940. Gierut

---

[2] Although we do not consider defense evidence when reviewing a nonsuit, we include this information for completeness and to suggest an explanation for the verdict.

3

alleged he had been fired for complaining about discrimination or harassment. The cause of action for wrongful termination alleged that he had been fired "in retaliation and in furtherance of [Applied's] discrimination on the basis of [Gierut's] injuries and disability." The first amended complaint, filed in March 2019 toward the beginning of trial, substantially repeated the wrongful termination allegations and, with respect to the FEHA retaliation claim, alleged that Gierut "was retaliated against because of the missed work due to his injuries, his request for accommodation (time off), his expected need for future accommodation to complete his recovery."

After 11 days of trial testimony, Applied moved for nonsuit on the FEHA retaliation cause of action. Applied argued that at the time Gierut made his request for time off, in December 2015, requesting an accommodation for a disability was not a protected activity for retaliation purposes. A request *became* protected activity on January 1, 2016, when an amendment to the Government Code went into effect. But Gierut did not request time off after January 1. Because he could not show he had engaged in protected activity, Gierut could not prevail on a retaliation claim. The court granted the motion for nonsuit on the retaliation cause of action on March 29. The court reasoned that requesting time off because of a disability was not protected in December 2015, so there could have been no statutory violation.

The case went to the jury on April 3, 2019. The court gave the following instruction on wrongful termination: "Keith Gierut claims he was discharged from his employment from Applied Medical for reasons that violate a public policy. It is a violation of public policy to discharge someone from employment because of a disability or because the employee needed time off because of a disability. [¶] To establish this claim, Keith Gierut must prove all of the following: [¶] One, that Mr. Gierut was employed by Applied Medical; [¶] Two, that Applied Medical discharged Keith Gierut; [¶] Three, that either a disability or the need for time off because of a disability was a

4

substantial motivating reason for Keith Gierut's discharge; [¶] And four, that the discharge caused Mr. Gierut harm."[3]

The jury returned its verdict on April 4, 2019. It found against Gierut on all the employment causes of action, including wrongful termination.[4]

## DISCUSSION

The sole issue Gierut has identified in appeal is the granting of Applied's nonsuit on the retaliation cause of action. "A motion for nonsuit allows a defendant to test the sufficiency of the plaintiff's evidence before presenting his or her case. Because a successful nonsuit motion precludes submission of plaintiff's case to the jury, courts grant motions for nonsuit only under very limited circumstances. [Citation.] A trial court must not grant a motion for nonsuit if the evidence presented by the plaintiff would support a jury verdict in the plaintiff's favor. [Citations.] [¶] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff ['s] favor . . . .'" [Citations.]" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 (*Carson*).)

"In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. 'The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences, and doubts in favor of the plaintiff a judgment for

---

[3] The jury received a separate instruction on the meaning of "substantial motivating reason."

[4] Applied cross-complained against Gierut for lying during the hiring process, specifically on his resume. The jury found that Gierut had lied, but that Applied had not been damaged as a result.

the defendant is required as a *matter of law*.' [Citations.]" (*Carson, supra*, 36 Cal.3d at p. 839, italics added.)

**I.          Retroactivity**

The factual basis for the nonsuit is undisputed. Gierut asked for time off because of his injuries in December 2015, before the amendment to section 12940 went into effect. He was fired in January 2016, after the effective date. He did not ask for time off after January 1, 2016. Our decision, therefore, involves the application of the principles of retroactivity, an issue of law that we review de novo. (See *Scott v. City of San Diego* (2019) 38 Cal.App.5th 228, 235.)

A claim for retaliation under the FEHA requires evidence of the following elements: (1) engagement in a protected activity, (2) subjection to an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472 (*Miller*); *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453.) "[T]he failure to present facts establishing a prima facie case justifies a grant of a motion for nonsuit." (*Chen v. County of Orange* (2002) 96 Cal.App.4th 926, 949 (*Chen*).)

As initially formulated, protected activity under section 12940, subdivision (h), the retaliation subdivision, was "oppos[ing] any practices forbidden under this part" or "fil[ing] a complaint, testif[ying], or assist[ing] in any proceeding under this part." Protected activity could take the form of either *opposing* practices or *participating* in proceedings. (*George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1489.)

In 2013, the court in *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 652-653 (*Rope*), held that firing an employee for requesting a disability accommodation was not retaliation. "On the contrary, case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of

6

activities protected by section 12940, subdivision (h) demonstrate some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful." (*Ibid.*)

The Legislature then acted to nullify this portion of the *Rope* opinion.[5] (Stats. 2015, ch.122.) Section 12940 was amended to add subdivision (m)(2), which prohibited an employer from "retaliat[ing] or otherwise discriminat[ing] against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."[6] The amendment became effective on January 1, 2016, and was not retroactive because it represented a change in the law, not a mere clarification. (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 246-247 (*Moore*); *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 942-944.)

Applied argues that when Gierut asked for time off, in 2015, such a request did not constitute "engagement in protected activity," the first element of a FEHA retaliation claim. Therefore one of the required elements of the cause of action was missing. Gierut argues that it doesn't matter when he made his request. The last act completing the cause of action was the "adverse employment action," termination, which took place in January 2016, after the amendment became effective. We disagree; Gierut alleged he was fired for things he did in 2015. That is the relevant time period.

A failure to show engagement in protected activity results in a failure to make out a prima facie case of retaliation. (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 384; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1193-1194; *Chen, supra,* 96 Cal.App.4th at pp. 949-950.) At the

---

[5] The Legislature did *not* state that this portion of the *Rope* opinion was incorrect. And it went out of its way to state that the rest of *Rope* was good law. (Stats. 2015, ch. 122.)

[6] The Legislature added this language to bring section 12940 in line with the Americans with Disabilities Act, which protects a person requesting an accommodation from retaliation (see 42 U.S.C. § 12230, subd. (b)) and with other employment-related California statutes offering the same protection. (Stats 2015, ch. 122.)

time Gierut asked for time off, such a request was not protected activity. *Both* protected activity *and* an adverse employment action are necessary for a viable retaliation claim.

Gierut cites *People v. Grant* (1999) 20 Cal.4th 150 (*Grant*) as authority for his argument that an accommodation request before the statute's effective date could support a retaliation claim. The issue in *Grant* was whether a child molester could be convicted of "continuous sexual abuse" under a newly enacted Penal Code statute if the abuse started before the effective date but continued after that date. The court held that he could. (*Id.* at p. 153.)

The court held that convicting the defendant under Penal Code section 288.5[7] did not make application of the code section retroactive. The court reasoned that the defendant had abused the victim at least once after the statute's effective date, and the determining factor was "whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date." (*Grant, supra,* 20 Cal.4th at p. 157.) Because the "last act" in this case was defendant's molesting the victim after the effective date, a conviction under the new statute did not render its application retroactive. (*Id.* at p. 158.)

The statute under consideration in *Grant* was a continuing course of conduct statute, "including at least three such acts, thus defining a new crime." (*Grant, supra,* 20 Cal.4th at p. 159.) It punished a course of conduct, not three separate acts. "'A continuous course of conduct offense cannot logically be "completed" until the last requisite act is performed. Where an offense is of a continuing nature, and the conduct continues after the enactment of a statute, that statute may be applied without violating the ex post facto prohibition.' [Citation.]" (*Ibid.*)

This case, however, does not involve a "continuing course of conduct." Instead, it involves two discrete acts: requesting an accommodation by an employee and

---

[7] Penal Code section 288.5 defined "continuous sexual abuse" in part as three acts of molestation within a three-month period.

an adverse employment action by an employer. The employee's act of requesting time off was entirely completed before the effective date of the new statute. As the court explained in *Aetna Casualty & Surety Co. v. Industrial Accident Commission* (1947) 30 Cal.2d 388 (*Aetna*), "'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' [Citation.]" (*Id.* at p. 391.) In *Aetna* the Industrial Accident Commission calculated a monetary award to a disabled employee in accordance with a law enacted after the employee had become disabled. The commission argued the disability itself was a "mere antecedent fact" and the right to compensation arose only after the commission had determined its existence. (*Id.* at pp. 391-392.) Therefore the commission had not applied the new statute retroactively.

The court disagreed. "The prior industrial injury was not a mere antecedent fact relating to the permanent disability ensuing therefrom; on the contrary, it was the basis of the right to be compensated for such disability. . . . Moreover, it is elementary that an industrial injury is the foundation of rights and liabilities under workmen's compensation laws." (*Aetna, supra,* 30 Cal.2d at p. 392.) "If substantial changes are made [in a statute], . . . the operation on existing rights would be retroactive 'because the legal effects of past events would be changed[.]' [Citation.]" (*Cole v. Fair Oaks Fire Protection Dist*. (1987) 43 Cal.3d 148, 153.)

In this case, Gierut's retaliation claim was founded on requesting an accommodation – time off because of his disability. The "legal effect" of requesting time off would be changed if it could become the protected activity of a retaliation cause of action. Basing a retaliation claim on activity that was not protected at the time it occurred would require a retroactive application of section 12940, subdivision (m)(2), and, as stated in *Moore*, the amendment was not retroactive. (*Moore, supra,* 248 Cal.App.4th at pp. 246-247.)

9

Analyzed differently, the issue resolves itself the same way. Retaliation has three independent elements: protected activity, adverse employment action, and a causal relationship between the two. We have already discussed the protected activity element. A causal connection, the third element, is also required for a prima facie case. The failure to establish the causal connection element is as fatal to a retaliation claim as the failure to establish protected activity. (See *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388 ["It is not enough that the plaintiff prove an employment decision has a substantial and detrimental effect on the terms and conditions of his or her employment. The employee must also show that the decision is linked to the employee's protected activity."]; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 107 ["There is no doubt that a necessary element of plaintiff's case is a 'causal link between [his] protected activity and the employer's actions. [Citations.]' [Citation.] After all, FEHA prohibits adverse treatment 'because of' protected activities."].)

In this case, the only activity at issue was Gierut's request for time off for his physical therapy. This request was not protected when he made it, and therefore he cannot establish a causal link between *protected* activity and an adverse employment action. The only way to establish that link is to regard asking for time off as protected activity, and the only way to do that is to make the statute retroactive.

Gierut's emphasis on the "last act" in this case being his termination completely ignores the causal-link element of a retaliation claim. It is true that Gierut could not have sued for retaliation until he was subjected to an adverse employment action, and it is true that being fired was just such an adverse action. But it is also true that a prima facie retaliation claim requires a causal link between protected activity and adverse action, a link Gierut cannot establish.

10

**II.**      **Prejudice**

Applied argues that even if the nonsuit was granted erroneously, Gierut cannot show prejudice because the jury found against him on a virtually identical claim, wrongful termination in violation of public policy.[8] If he had presented the FEHA retaliation claim to the jury, Applied maintains, he would have lost on that one too. Therefore granting the nonsuit did not prejudice Gierut because he would not have obtained a better outcome.

On appeal, Gierut contends that retaliation and wrongful termination are not identical, and if the jury had been separately instructed on retaliation, it might have found in his favor. He argues that while the other FEHA claims, such as disability discrimination or failure to accommodate, require the employee to be "physically disabled" as defined in section 12926, subdivision (m),[9] a retaliation claim has no such requirement. An employee can maintain a retaliation claim if he believes reasonably and in good faith that he has an injury requiring accommodation, even if his injury does not qualify as a disability under section 12926, subdivision (m).

This "reasonable, good faith belief" argument is an extension of holdings in retaliation cases in which retaliation was limited to adverse employment actions for opposing practices that violated FEHA or for participating in proceedings. Courts have held that an employee did not have to show the opposed practices actually violated

---

[8] During the discussion of its motion for nonsuit, Applied argued to the trial court that the two causes of action were duplicative. The court allowed the wrongful termination claim to go to the jury.

[9] Section 12926, subdivision (m), provides: "'Physical disability' includes, but is not limited to, all of the following: [¶] (1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following: [¶] (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine. [¶] (B) Limits a major life activity. For purposes of this section: [¶] (i) 'Limits' shall be determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity. [¶] (ii) A physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss limits a major life activity if it makes the achievement of the major life activity difficult. [¶] (iii) 'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working."

11

FEHA. A good faith and reasonable belief that they did sufficed. (See *Yanowitz, supra,* 36 Cal.4th at p. 1043; *Miller, supra,* 36 Cal.4th at pp. 474-475; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 477.)

Gierut extends this concept to retaliation for an accommodation request. He now argues that he did not have to be disabled as defined by statute to maintain a retaliation claim; he had only to have a reasonable and good faith belief that his injuries required an accommodation. A claim for termination in violation of public policy, by contrast, required a statutory disability, which the jury might not have believed he had. He was therefore prejudiced by the removal of the retaliation claim with its easier burden of proof.

There is an insurmountable problem with this argument. It is raised for the first time on appeal, and it was not developed until Gierut's reply brief.[10] We do not entertain legal theories that were not first introduced in the lower court. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1065-1066; *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 684-645; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) And we generally do not consider arguments raised for the first time in a reply brief. (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 178; *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.)

When he opposed the motion for nonsuit – and opposed Applied's motion in limine on the same grounds at the outset of trial – Gierut never mentioned a lesser disability standard for a retaliation claim. In both cases, his argument focused on retroactivity. The proposed retaliation instruction he submitted, which was not given after the nonsuit, read: "Keith Gierut claims that [Applied] retaliated against him because he requested accommodation for his disability. To establish this claim, Keith Gierut must prove all of the following: [¶] 1. That Keith Gierut requested accommodation *because of*

---

[10] The argument was alluded to in a sentence fragment in the opening brief.

12

*his disability*; [¶] 2. That Keith Gierut's request for accommodation substantially motivated [Applied's] decision to terminate his employment; [¶] 3. That Keith Gierut was harmed; and, [¶] 4. That [Applied's] decision to discharge Keith Gierut was a substantial factor in causing Keith Gierut harm. [¶] *Keith Gierut does not have to prove discrimination in order to be protected from retaliation. If he reasonably believed that he requested a disability accommodation, he may prevail on a retaliation claim even if he does not present, or prevail on, a separate claim for discrimination.*" (Italics added.) Gierut wanted the court to tell the jury that his belief about the clarity or adequacy of his request for accommodation was the critical factor, not his belief about the nature of his injury. The proposed instruction was also predicated on Gierut's having an actual disability.

Gierut cannot raise a new theory – or implicitly criticize a jury instruction – for the first time on appeal. He had to present his theory of a lesser burden for a retaliation claim to the trial court in the first instance. It is too late to raise it now.

## DISPOSITION

The order granting the nonsuit is affirmed. Appellant's request for judicial notice is denied as unnecessary. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9.) Respondent is to recover its costs on appeal.

BEDSWORTH, ACTING P. J.

I CONCUR:

ARONSON, J.

13

Moore, J., Concurring.

I concur with the majority opinion that Gierut has not established any prejudice from the alleged error. I would have affirmed the trial court solely on this ground.

On appeal, the trial court's judgment is presumed correct and Gierut has the burden of showing error. (*People v. Booth* (2018) 25 Cal.App.5th 450, 452.) Here, he must show it was reasonably probable that the jury would have found in his favor on his retaliation claim had Applied's motion for nonsuit been denied. (See *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999; see, e.g., *Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1499-1500; *Ashcraft v. King* (1991) 228 Cal.App.3d 604, 616.) He has not met that burden.

As stated in the majority opinion, Gierut brought claims against Applied for retaliation and wrongful termination in violation of public policy, among others. His wrongful termination claim arose from the same set of facts as his retaliation claim. Gierut's retaliation claim was based on allegations that Applied terminated him because he requested time off to recover from his injuries. (Maj. Opn., *ante*, p. 4.) His wrongful termination claim was based on the same theory and was rejected by the jury. For example, jury instructions stated it was against public policy to discharge Gierut because of "his request for time off . . . [to] accommodat[e] [his] disability." Likewise, they also stated "[i]t is a violation of public policy to discharge someone from employment because of a disability or *because the employee needed time off because of a disability*." (Italics added.) The instructions further stated Gierut had to show "that either a disability

1

or the *need for time off because of a disability* was a substantial motivating reason for Gierut's discharge."[1] (Maj. Opn., *ante*, pp. 4-5, italics added.)

The jury's finding on the wrongful termination claim shows that it rejected the theory underpinning the retaliation claim. Gierut contends that the jury's finding on the wrongful termination claim did not inherently preclude it from finding for him on the retaliation claim. Specifically, he argues the wrongful termination claim required the jury to find that he was actually disabled, while his retaliation claim did not. Rather, the latter only required him to show a reasonable belief that he was disabled. Thus, he suggests the jury could have rejected his wrongful termination claim on grounds he was not disabled. It then could have ruled for him on the retaliation claim if it found that he reasonably believed himself to be disabled. Even if we presume this distinction is legally correct, it has been forfeited because Gierut raised it for the first time on appeal.

"[P]arties are not permitted to '"adopt a new and different theory on appeal. To permit [them] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." [Citations.]' [Citations.] Only when the issue presented involves purely a legal question, on an uncontroverted record and requires no factual determinations, is it appropriate to address new theories." (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847, italics omitted.) Application of this rule is particularly apt in this case since we cannot address Gierut's argument without speculating about the evidence and arguments presented below. As such, it would be inappropriate to address this theory.

---

[1] Gierut argues the jury never reached the instruction that used the language "request for time off" and that the instructions the jury relied upon only used the "need" time off language. But he fails to explain why this difference is material. It appears the distinction in these terms relates to whether he was actually disabled or had a reasonable belief he was disabled, which is discussed below.

For Gierut's argument to prevail, he must show that the jury reasonably could have decided against him on the wrongful termination claim because it found he was not disabled. He has not shown this contention is plausible. He cites nothing from the record showing that either party ever argued or presented evidence that he was not disabled. It is unclear whether this issue was even contested at trial. As such, we have no reason to believe that the jury ruled against him on the wrongful termination claim because it concluded that he was not disabled. Gierut's argument also requires us to find that the jury could have determined that he reasonably believed himself to be disabled. Again, he has cited no evidence to support this theory. It is unclear what specific evidence the jury could have relied upon to make this finding. To the extent evidence was introduced on these issues, the trial court was far better positioned to evaluate the merits of these fact-based assertions, as it heard all the arguments and evidence presented by the parties.

MOORE, J.